## ROBERT WILLIAM SWAIN, JR. *v.* NANCY DIANN SWAIN

[No. 83, September Term, 1979.]

*Decided October 16, 1979.*

The cause was argued before THOMPSON, MOYLAN and MACDANIEL, JJ.

*Paul R. Wiesenfeld* for appellant.

*Roger K. Bain,* with whom were *Wheeler & Korpeck* on the brief, for appellee.

MACDANIEL, J., delivered the opinion of the Court.

This appeal is from the child custody portion of a divorce decree entered on December 15, 1978, by the Circuit Court for Montgomery County. On that date, Robert William Swain, Jr., the appellant, was awarded a divorce *a vinculo matrimonii* from Nancy Diann Swain, the appellee, based on the appellee's adultery. The appellee's Bill of Complaint seeking a divorce *a mensa et thoro* was denied. Earlier, on December 30, 1977, custody of the minor child, Karen L. Swain, had been awarded, *pendente lite,* to Mrs. Swain. The December 15, 1978, decree awarded permanent custody to Mrs. Swain.

The present case was tried on October 4, 5, 6 and December 6, 1978. In his opinion the chancellor stated:

> "The evidence in the case establishes with critical clarity that Nancy Swain has committed adultery. This is proven from the evidence and acknowledged by her from the witness stand.
>
> . . .
>
> The Court will state at the outset that were it not for the adultery of the mother it would have no difficulty in making a determination that custody of the minor child of the parties should be awarded to the mother. She has had custody of the child from the time of the separation of the parties to the present time except for a period in which, contrary to an Order of this Court by another Judge, custody was taken into his own hands by the father and retained for some two and a half months. It seems quite plain and clear to the Court that the conduct of the mother towards the child has been that of a loving parent. It seems also to the Court that the conduct of the father towards the child has been that of a loving father. . . . The Court is persuaded that the mother of the child has done nothing to alienate the child from the father. The record seems to justify

the conclusion that the Court makes that on the other hand the father has followed a course of action that he coldly calculated, may opt to separate the affection of the child from the mother.

In such circumstances, it would be hard to conclude otherwise than that custody of the child should be given to the mother in the absence of circumstances that would indicate that the welfare of the child would be harmed or would not be benefitted by the granting of custody to the mother.

The single factor that would lead to the possibility that such a condition exists here stems from the circumstance that the mother is living in open adultery, in a continuous fashion with someone since February, 1978. . . .

Both the parties to this attachment have indicated that they propose ultimately to be married. Whether and when, if at all such a union of parties can be accomplished, is of course under the law of Maryland as it exists today a somewhat doubtful thing.

. . .

The union of Mrs. Swain and Mr. Impellizeri causes concern also because it appears that although both dislike the description that they were living together for the substantial period of time between February, 1978 and continuing, obviously in the absence of testimony to the contrary up to the present moment, both acknowledged that his presence within the apartment of the mother and where the child resides, it's frequent during each week, and that his visitation in that apartment, whether he is living there in the sense that they seem to object or not, he is there overnight. He is there when the child goes to bed. He is there when the child arises in the morning.

. . .

The question then is when under those facts, the circumstances of the relationship between Mrs.

Swain and Mr. Impellizeri justifies the Court or requires the Court or permits the Court to grant custody of the child to Mrs. Swain in the presence of those acknowledged circumstances."

After summarizing earlier Maryland decisions which discuss the effect of a parent's adulterous conduct on the award of custody, the chancellor quoted from *Davis v. Davis,* 280 Md. 119, 127 (1977), U.S. *cert. denied,* 434 U.S. 939, *reh. denied,* 434 U.S. 1025:

" 'We now explicitly hold what the *Pontorno* and *Neuwiller* cases implicitly recognized, *i.e.,* that whereas the fact of adultery may be a relevant consideration in child custody awards, no presumption of unfitness on the part of the adulterous parent arises from it; rather it should be weighed, along with all other pertinent factors, only insofar as it affects the child's welfare. We note that this view is in accord with the majority of other courts around the country.' "

The chancellor continued in his own words:

"It then becomes the duty of this Court to deal with the factual conditions outlined heretofore in the light of the decision in Davis. The Court concludes that although the possibility exists that as time pursues, if the party, if Mrs. Swain and Mr. Impellizeri maintain the position they presently occupy, the adulterous position they occupy, or at least will continue so long as Mr. Impellizeri remains married to his wife now in Italy, there may indeed be some harmful effect upon this child as time goes on. We cannot however, in the view of this Court, speculate upon such a circumstance or condition because the Court finds that there's absolutely nothing in relationship at this point in time that mars or stains in any way the life of the child.

In short, the Court believes that the relationship between parties has not at that point been shown to

have had a deleterious effect upon the child's welfare. Accordingly, the Court believes that the adulterous conduct of the mother does not outweigh the circumstances that otherwise would have impelled the Court to grant custody to the mother. Since it does not outweigh those circumstances, the Court will pass a decree awarding custody of the minor child of the parties to the mother."

The appellant now contends that the chancellor misapplied the law to the facts of this case and abused his discretion in granting permanent custody of the minor child to Mrs. Swain. He argues that the chancellor was clearly erroneous in his failure to conclude that there was substantial detriment to the child from its exposure to the adulterous relationship of the mother. We disagree.

# I

In *Christman v. O'Connor,* 36 Md. App. 263, 270-71 (1977), this Court, citing *Davis v. Davis, supra,* explained the standards of appellate review applicable to child custody disputes. We said:

" 'In sum, we point out three distinct aspects of review in child custody disputes. When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086 applies. If it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion.' (footnote 4 omitted). *Davis v. Davis, supra* at 125-26.

This has been further explained by the Court of Appeals in *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977):

'The teaching of *Davis v. Davis, supra,* is plain. The ultimate conclusion as to the custody of a child is within the sound discretion of the chancellor. That conclusion is neither bound by the strictures of the clearly erroneous rule, that rule applying only to factual findings of the chancellor in reaching the conclusion, nor is it a matter of the best judgment of the reviewing court. It is not enough that the appellate court find that the chancellor was merely mistaken in order to set aside the custody award. Rather, the appellate court must determine that the judicial discretion the chancellor exercised was clearly abused. This is the principle which controls the review of any matter within the sound discretion of a trial court as distinguished from a judgment falling squarely within the ambit of the clearly erroneous rule.' *Id.* at 186."

## II

With respect to the law applicable to this case, the chancellor correctly relied on *Davis v. Davis, supra.* That Court said:

"Perhaps in response to the rapid social and moral changes in our society, two of this Court's most recent cases have implicitly recognized that a finding of adultery per se no longer is a 'highly persuasive indicium' of unfitness to have custody of one's child. In *Pontorno v. Pontorno, supra,* 257 Md. at 580, 263 A.2d at 822, Judge Finan for the Court, without mention of any presumption of unfitness, stated that 'a finding of adultery is relevant to the extent that it may affect the welfare of the children.' And in *Neuwiller v. Neuwiller, supra,* 257 Md. at 286, 262 A.2d at 737, this Court, again speaking through Judge Finan, held that where adulterous behavior is

'not determinative of the central issue [as to] who will further the best interests of the child,' an infant may be awarded to a mother despite the fact that there is no showing that she had discontinued her conduct. *Cf. Hild v. Hild,* 221 Md. 349, 363-64, 157 A.2d 442, 450 (1960) (Hammond, J., dissenting) (adultery should not create presumption of unfitness, but should be weighed by trier of fact in relation to individuals in each case)." 280 Md. at 127.

The *Davis* Court then stated its holding, quoted in the chancellor's opinion, *supra.* The keynote of that holding is that in a custody dispute, the adultery of one of the parents should be considered, along with other factors, *"only insofar as it affects the child's welfare."* (Emphasis added.)

## III

In the present case, we hold, initially, that none of the chancellor's findings of fact are clearly erroneous. Mrs. Swain's adultery is admitted, and no factual aspects of her adulterous relationship appear to be seriously in dispute. From these facts, fairly summarized in his opinion, *supra,* the chancellor was not clearly erroneous in finding that the child had not been adversely affected by the adulterous relationship. We note that the appellant argues that it was possible that the child's bedroom door was open when the couple "made love." However, the chancellor properly refrained from engaging in guesswork and surmise as to whether the door actually was open and, if it was, whether the child was aware of what might be going on in the next room.

The appellant's main argument appears to be that the chancellor erred in matters of law. The appellant contends that "The Court of Appeals has long recognized that *exposure* to an adulterous relationship inevitably causes detriment to the morals and welfare of a child of impressionable years." This was not changed by the *Davis* decision, he argues, which merely took away the strong presumption that an adulterer was an unfit parent. The appellant contends that there still

remains a presumption that adultery does have an adverse effect on a child and that this presumed harmful effect must be weighed along with other indicia of parental fitness. He contends, finally, that the chancellor improperly refused to weigh this presumed harmful effect against Mrs. Swain. We entirely disagree.

As we read the *Davis* opinion, *supra,* there are now no presumptions whatsoever with respect to the fitness of a parent who has committed, or is committing, adultery. Rather, adultery is relevant *only* insofar as it *actually* affects a child's welfare. We will not presume a harmful effect, and the *mere* fact of adultery cannot "tip the balance" against a parent in the fitness determination. Thus, a chancellor should weigh, not the adultery itself, but only any actual harmful effect that is supported by the evidence.

A review of the Record Extract in this case convinces us that the chancellor correctly understood and applied the law. He simply found, to the appellant's displeasure, that there was only a *possibility* that the child might, at some future time, be harmed by the mother's adulterous relationship. From the evidence, the chancellor found that the child was not presently adversely so affected.

Finally, we find no abuse of discretion in the chancellor's decision to award permanent custody of the minor child to Mrs. Swain. The chancellor found that both parents treated the child well. Thus, in light of the fact that he found no adverse effect on the child from the mother's adultery, we cannot say that the judicial discretion that the chancellor exercised was clearly abused. As the Court of Appeals said in *Davis v. Davis, supra,* at 132:

> ". . . to disturb the award here would require that we substitute our judgment for that of the chancellor, and an appellate court sits in a much less advantageous position to assure that the child's welfare is best promoted."

*Decree affirmed.*
*Costs to be paid by appellant.*