521 A.2d 320

David M. QUEEN

v.

Dora M. QUEEN.

No. 59, Sept. Term, 1986.

Court of Appeals of Maryland.

March 2, 1987.

Richard D. Albright, Washington, D.C., for appellant.

Paula J. Peters, Annapolis, for appellee.

Argued before MURPHY, C.J. and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

The Property Disposition in Annulment and Divorce Law, Maryland Code (1984), § 8–201(e) of the Family Law Article defines "marital property" to mean

"the property, however titled, acquired by 1 or both parties during the marriage.

(2) 'Marital property' does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources."

The primary issue in this case is whether a lump sum workers' compensation award for permanent partial disability for injury sustained during the marriage constitutes marital property within the contemplation of § 8–201(e).

### I.

David and Dora Queen were married on October 26, 1964 and had three children during the course of their nearly twenty-year marriage, one of whom was an emancipated adult at the time the divorce proceedings began. After the wife first left the family home in late December of 1982, the parties separated and reconciled periodically throughout the first half of 1983. On July 23, 1984, the wife filed a complaint for a divorce *a vinculo matrimonii* from the husband. The two minor children of the parties, Peter, age six, and Hope, age sixteen, were then under the wife's care and custody.

On April 28, 1982, before the initial separation, the husband sustained an injury to his neck and shoulders while working as an assistant pressman at Saul Lithograph Co., Inc. He had worked for this employer since 1970, but was discharged in November of 1982, shortly after he was injured. The husband received $276.70 per week in workers' compensation benefits from May 1982 to September 1983; the benefit amount was then reduced to $143.32 per week from September 1983 to June 1984. On June 18, 1984, the husband received a lump sum permanent partial disability settlement of $60,000, less $5,000 in attorney's fees and costs. The husband deposited the award in a separate bank account in his name only.

The Circuit Court for Calvert County (Bowen, J.) granted the wife's prayer for absolute divorce on August 12, 1985. The court determined that the marital property consisted of the parties' house in College Park, furniture acquired during the marriage, and the husband's fully vested, noncontributory, profit-sharing retirement plan. The husband was ordered to pay $300 monthly for child support.

The court entered a supplemental judgment on November 12, 1985. It determined that the lump sum permanent partial workers' compensation award was marital property. The court did not award alimony to the wife. After adjusting the equities of the parties in the marital property, the

court ordered the husband to pay $33,490 to the wife. Custody of the minor child was permanently awarded to the wife on December 13, 1985. The husband appealed, challenging both the marital property and child custody awards. We granted certiorari before consideration of the appeal by the Court of Special Appeals to review the important issues raised in the case.

## II.

We first review the husband's contention that his lump sum workers' compensation award is not marital property. In interpreting provisions of the Marital Property Act, we have considered the Report of the Governor's Commission on Domestic Relations Law (1978), which reflects the Act's history. As we said in *Unkle v. Unkle*, 305 Md. 587, 595, 505 A.2d 849 (1986),

> "[T]he statute indicates that nonmonetary contributions within a marriage should be recognized in the event that a marriage is dissolved; that a spouse whose activities do not include the production of income may nevertheless have contributed toward the acquisition of property by either or both spouses during the marriage; that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses; and that the accomplishment of these objectives necessitates that there be a departure from the inequity inherent in Maryland's old 'title' system of dealing with the marital property of divorcing spouses."

In undertaking to define the reach of the term "marital property" under § 8–201(e), we observed in *Deering v. Deering*, 292 Md. 115, 125, 437 A.2d 883 (1981), quoting *Diffendall v. Diffendall*, 239 Md. 32, 36, 209 A.2d 914 (1965) that "property" ordinarily embraces " 'everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition.' " Moreover, when

used without express or implied qualifications, we have said that property " 'may reasonably be construed to involve obligations, rights and other intangibles as well as physical things.' " *Unkle, supra,* 305 Md. at 595, 505 A.2d 849 (quoting *Bouse v. Hutzler,* 180 Md. 682, 686, 26 A.2d 767 (1942)).

In *Deering, supra,* we held that a spouse's pension rights, to the extent accumulated during the marriage, constituted a form of "marital property" subject to equitable distribution upon dissolution of marriage.[1] We reasoned that pensions are similar to other types of employee benefits "acquired" during the marriage, such as stock options and profit-sharing plans. We noted also that both spouses have the same retirement expectations regarding pensions as they would had they used the contributions to the pension plan to buy other deferred income assets. Moreover, we stated that the fact that a pension right might be conditioned upon the occurrence of certain events, such as continued employment did not "degrade that right to an expectancy [because] ... [t]he law has long recognized that a contingent future interest is property." *Id.* 292 Md. at 128, 437 A.2d 883 (quoting *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 638 n. 8, 544 P.2d 561, 566 n. 8 (1976)). Thus, under *Deering,* it is immaterial whether the retirement plan was vested or not, contributory or noncontributory. Rather, the critical issue was " 'whether a property right has been acquired during the marriage and whether equity warrants its inclusion in the marital estate in light of its limitations.' " *Id.,* 292 Md. at 127, 437 A.2d 883 (quoting *Weir v. Weir,* 173 N.J.Super. 130, 413 A.2d 638, 640 (1980)).

---

1. In 1986 the General Assembly amended § 8–205(a) of the Family Law Article to enable the trial court, after it determined which property was marital property, to "transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both parties, grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded."

We again addressed spousal rights to a pension plan in *Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984). At issue there was a work-related disability pension plan to which the husband had been making obligatory contributions. We held that the rationale of *Deering* supported the conclusion that a disability plan, in appropriate circumstances, may constitute marital property. We stated:

> "There are many types of retirement plans under which the rights the beneficiaries possess often differ, depending on a wide variety of factors. *Deering,* following the dominant trend of the law, rejected such distinctions in making the threshold determination of whether a retirement plan is marital property.... Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability. Thus, a disability plan, like a service plan, is property and, within the meaning of the Act, constitutes marital property subject to equitable distribution."

*Lookingbill, supra,* 301 Md. at 289, 483 A.2d 1.

One year later in *Archer v. Archer,* 303 Md. 347, 493 A.2d 1074 (1985), we concluded that a professional degree or license is not marital property. We reasoned that neither possessed the essential characteristics of either a present or a future property interest. We there said:

> "While pension rights, as in *Deering,* constitute a current asset which the individual has a contractual right to receive, such rights are plainly distinguishable from a mere expectancy of future enhanced income resulting from a professional degree. The latter is but an intellectual attainment; it is not a present property interest. It is personal to the holder; it cannot be sold, transferred, pledged or inherited. It does not have an assignable value nor does it represent a guarantee of receipt of a set monetary amount in the future, such as pension benefits.... At best, it represents a potential for increase in a person's earning capacity made possible by the degree and license in combination with innumerable other factors

and conditions too uncertain and speculative to constitute 'marital property' within the contemplation of the legislature.... (Citations omitted). Moreover, as *Dewitt v. Dewitt*, 98 Wis.2d 44, 296 N.W.2d 761 (1980), makes clear, income earned after the marriage is dissolved as a result of the degree/license would in no event constitute 'marital property' within the definition of that term in § 8–201(e), since it would not have been acquired during the marriage."

*Archer, supra*, 303 Md. at 357–58, 493 A.2d 1074.

Most recently, we held that an inchoate tort claim for personal injury that accrued while the spouses were separated, but before they divorced, was not "marital property". *Unkle, supra*, 305 Md. at 587, 505 A.2d 849. In that case, the husband suffered two broken legs in an accident at an amusement park during the period of the couple's separation. We stated that an unliquidated tort claim for money damages is a chose in action and thus potentially assignable, but that this fact alone did not determine whether the claim constituted marital property. We explained:

"The claim is uniquely personal to the holder. And while it may have some attributes of personal property, the claim was not, within the ambit of the statutory language, 'acquired' during the marriage by one or both spouses. It arose from purely fortuitous circumstances and not from any on-going marital initiative to acquire marital assets. The claim simply accrued to the injured spouse as a result of an accident and was his separate property.... The claim is simply not the type of resource contemplated by the statutory definition of marital property even though, in part at least, payment of the claim would produce monies which would replenish marital assets previously diminished through payment of medical expenses and the loss of wages."

*Id.* at 596, 505 A.2d 849.

Although the question of whether workers' compensation benefits are marital property is one of first impression in

this Court, several other state courts have considered the issue. The timing of the award and of the receipt of benefits has played a key role in their decisions. The majority view is that workers' compensation benefits awarded before the parties' divorce for work-related injuries occurring during the marriage are marital property.[2] Some courts presume that property not expressly excluded as separate property by the language of their state's marital property act is included as marital property. *See Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757, 758–59 (1985); *In re Marriage of Dettore*, 86 Ill.App.3d 540, 42 Ill.Dec. 51, 52–53, 408 N.E.2d 429, 430–31 (1980); *Lukas v. Lukas*, 83 Ill.App.3d 606, 39 Ill.Dec. 161, 166, 404 N.E.2d 545, 550 (1980); *Johnson v. Johnson*, 638 S.W.2d 703, 704 (Ky.1982); *Quiggins v. Quiggins*, 637 S.W.2d 666, 668–69 (Ky.Ct.App. 1982); *Gonzalez v. Gonzalez*, 689 S.W.2d 383, 385–86 (Mo. App.1985); *Hughes v. Hughes*, 132 N.J.Super. 559, 334 A.2d 379, 380–81 (1975). Some courts have also reasoned that workers' compensation acts generally seek to aid not merely the injured worker, but the worker's family as well, and the benefits are therefore marital property. *See Smith v. Smith*, 113 Mich.App. 148, 317 N.W.2d 324, 326 (1982); *Evans v. Evans*, 98 Mich.App. 328, 296 N.W.2d 248, 248 (1980), *leave denied*, 410 Mich. 884 (1981); *Hughes v. Hughes, supra*, 132 N.J.Super. 559, 334 A.2d at 381. Final-

---

**2.** *See Bugh v. Bugh,* 125 Ariz. 190, 608 P.2d 329 (1980); *Goode v. Goode,* 286 Ark. 463, 692 S.W.2d 757 (1985); *In re Marriage of Robinson,* 54 Cal.App.3d 682, 126 Cal.Rptr. 779 (1976); *Cook v. Cook,* 102 Idaho 651, 637 P.2d 799 (1981); *In re Marriage of Thomas,* 89 Ill.App.3d 81, 44 Ill.Dec. 430, 411 N.E.2d 552 (1980); *In re Marriage of Dettore,* 86 Ill.App.3d 540, 42 Ill.Dec. 51, 408 N.E.2d 429 (1980); *Lukas v. Lukas,* 83 Ill.App.3d 606, 39 Ill.Dec. 161, 404 N.E.2d 545 (1980); *Johnson v. Johnson,* 638 S.W.2d 703 (Ky.1982); *Quiggins v. Quiggins,* 637 S.W.2d 666 (Ky.Ct.App.1982); *Smith v. Smith,* 113 Mich.App. 148, 317 N.W.2d 324 (1982); *Evans v. Evans,* 98 Mich.App. 328, 296 N.W.2d 248 (1980), *leave denied,* 410 Mich. 884 (1981); *Hughes v. Hughes,* 132 N.J.Super. 559, 334 A.2d 379 (1975); *York v. York,* 579 S.W.2d 24 (Tex.Civ.App.1979); *Hicks v. Hicks,* 546 S.W.2d 71 (Tex.Civ.App.1976); *see also In re Marriage of McDonald,* 52 Cal.App.3d 509, 125 Cal.Rptr. 160 (1975) (workers' compensation awards received before separation of the parties are community property).

ly, some courts have analogized workers' compensation benefits to personal injury awards, or portions thereof, which they previously held to constitute marital property. *See Bugh v. Bugh*, 125 Ariz. 190, 608 P.2d 329, 331 (1980); *Cook v. Cook*, 102 Idaho 651, 637 P.2d 799, 801 (1981); *Gonzalez v. Gonzalez, supra*, 689 S.W.2d at 385–86; *Hughes v. Hughes, supra*, 132 N.J.Super. 559, 334 A.2d at 380–81; *Hicks v. Hicks*, 546 S.W.2d 71, 73 (Tex.Civ.App. 1976).

Courts are divided, however, where the workers' compensation periodic payments extend beyond the dissolution of the marriage or a lump sum award is made after the divorce. Courts in "common law" states having equitable distribution provisions in their marital property statutes generally hold that the date the compensation claim accrues, rather than the date the award is received, determines the classification of the property as marital or separate.[3] *See, e.g., Goode v. Goode, supra*, 286 Ark. 463, 692 S.W.2d at 758; *In re Marriage of Thomas*, 89 Ill.App.3d 81, 44 Ill.Dec. 430, 431, 411 N.E.2d 552, 553 (1980); *Smith v. Smith, supra*, 113 Mich.App. 148, 317 N.W.2d at 326; *Hughes v. Hughes, supra*, 132 N.J.Super. 559, 334 A.2d at 382. Thus, according to these courts, it makes no difference whether the award is paid during or after the marriage; a few courts have pointed out that to hold otherwise would encourage delay in the filing of the workers' compensation claim. As the court stated in *In re Marriage of Dettore, supra*, 42 Ill.Dec. at 53, 408 N.E.2d at 431:

"We cannot condone a result which invites workman's compensation claimants to protract the arbitration for their award so as to shield that award from equitable division by the dissolution court. We must hold that if the claim for a compensation award accrues during the

___

**3.** The term "common law states" in this discussion refers to those states which have not enacted community property laws whereby marital property is characterized as separate or community property at the time the property is acquired. *See generally* J. Green, J. Long, & R. Murawski, *Dissolution of Marriage*, §§ 10.01—.07 (1986).

marriage, the award is marital property regardless of when received."

*See also Goode v. Goode, supra,* 692 S.W.2d at 759; *In re Marriage of Thomas, supra,* 44 Ill.Dec. at 432, 411 N.E.2d at 554.

A few common law jurisdictions, however, have held otherwise. In *Mosley v. Mosley,* 682 S.W.2d 462 (Ky.Ct. App.1985), for example, the court held that the husband's workers' compensation benefits, which had not been received prior to dissolution of the marriage, were not marital property. The court stated:

"A workers' compensation award differs from a pension. A pension accrues while one is working and, to the extent that it has accrued and is vested prior to the dissolution of a marriage, it must be considered with the marital estate. Workers' compensation benefits are based on something that happened while one was employed and, although the event may have occurred during the time of the marriage, the compensation is awarded to replace the injured or diseased employee's loss of ability to work in the future. The benefits are not earned as compensation for working; they are paid to assist workers who will have diminished future earnings due to a work-caused injury or disease. Payments that are received, or weekly benefits that have actually accrued but have not yet been paid as of the date of the dissolution of the marriage, are to be included as marital property, just as earned income. But, payments which accrue and are paid after the dissolution of the marriage are not part of the marital property any more than the worker's future earnings would be. Compensation benefits, together with other income of a spouse, may be considered when determining what, if any, maintenance to award to the other spouse, but the nonworking spouse is not entitled to any specific portion of the future income from the worker's disability compensation."

*Id.* at 463. *Cf. Gloria B.S. v. Richard G.S.,* 458 A.2d 707 (Del.Fam.Ct.1982) (workers' compensation award received

or to be received is separate property not subject to equitable distribution even though the injury occurred during the marriage); *Gerlich v. Gerlich,* 379 N.W.2d 689 (Minn. App.1986) (workers' compensation settlement based on permanent disability was given to compensate injuries personal to a spouse and was therefore nonmarital property.)

The Kentucky court's reasoning in *Mosley, supra,* is similar to that followed by community property jurisdictions, both those with and without equitable distribution provisions in their community property statutes.[4]  Courts in Arizona, California, Idaho, and Texas have determined that any benefits received after the divorce are the separate property of the injured spouse; they consider such benefits as compensation for the loss of future earning capacity, and not merely for loss of wages.  As explained by the Supreme Court of Idaho in *Cook v. Cook, supra,* 637 P.2d at 802:

> "[S]ince workmen's compensation is paid to make good the impairment or loss of an individual's future capacity to earn, the community cannot lay claim to the whole of the benefit where it compensates for a period of disability which extends beyond the time of divorce.  To hold otherwise would result in the deprivation of an individual's basic source of financial security.  The dispositive question in classifying workmen's compensation benefits as community or separate property, therefore, is not whether the right to receive benefits vested during marriage, but rather to what extent the award compensates for loss of earning capacity during marriage."

*See also Bugh v. Bugh, supra,* 608 P.2d at 332; *In re Marriage of Robinson,* 54 Cal.App.3d 682, 685–86, 126

---

**4.**  Community property states include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas and Washington.  Five of these permit a court in a divorce proceeding to divide the property in a just and equitable manner.  *See* Ariz.Rev.Stat.Ann. § 25–318 (Supp.1986); Idaho Code § 32–712 (Supp.1981); Nev.Rev.Stat. § 125.150 (1986); Tex.Fam.Code § 3.63 (Vernon Supp.1987); Wash.Rev.Code Ann. § 26.09.080 (1986).

Cal.Rptr. 779 (1976); *Hicks v. Hicks, supra,* 546 S.W.2d at 73–74.

In determining whether the permanent partial disability award at issue in this case is marital property "acquired" during the marriage, we consider not only the date of the award, but also the nature of the benefit which it represents. Because the Workmen's Compensation Act, Maryland Code (1985 Repl.Vol.) Art. 101 requires employers to provide such coverage for their employees, workers' compensation benefits constitute a type of employment-related benefit which replaces the common law right of employees to bring tort actions against their employers for job-related personal injuries.

The amount and duration of workers' compensation benefits depend on the injury sustained by the employee. Injuries are classified under the Workmen's Compensation Act, Art. 101, according to whether they are: 1) partial or total; and 2) temporary or permanent. Total, as distinguished from partial, disability occurs when a worker " 'is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist.' " *Babcock & Wilcox, Inc. v. Steiner,* 258 Md. 468, 474, 265 A.2d 871 (1970) (quoting *Lee v. Minneapolis St. Ry.,* 230 Minn. 315, 41 N.W.2d 433, 436 (1950)). A temporary, as distinguished from permanent, disability exists "until the injured workman is as far restored as the permanent character of the injuries will permit." *Jackson v. Bethlehem-Fairfield Shipyard,* 185 Md. 335, 339, 44 A.2d 811 (1945). Differentiating between temporary and permanent disabilities, several courts have observed that temporary disability payments are a substitute for lost wages during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity. Thus, these courts indicate that permanent disability is not based solely on loss of wages, but is based on actual incapacity to perform the tasks usually encountered in one's

employment, and on physical impairment of the body that may or may not be incapacitating. *See In re Marriage of Robinson, supra,* 54 Cal.App.3d at 685–86, 126 Cal.Rptr. 779; *Russell v. Bankers Life Co.,* 46 Cal.App.3d 405, 415–16, 120 Cal.Rptr. 627 (1975).

The record in this case discloses that the husband sustained an injury to his neck and shoulder causing permanent partial disability. Article 101, § 36(3)(a) defines such a disability as one "partial in character but permanent in quality...." It is clear that both permanent partial "scheduled" injuries—those that result in loss or loss of use of a specific, listed, member of the body, such as a thumb, foot, or an eye—and nonscheduled injuries, such as back injuries, involve a loss of the employee's future earning capacity.[5] *See Giant Food, Inc. v. Coffey,* 52 Md.App. 572, 451 A.2d 151 (1982), *cert. denied,* 295 Md. 283 (1983). Thus, the husband's lump sum permanent partial disability award in the present case represents an amount based on the loss of future earning capacity and not merely upon the loss of wages.

Turning to the facts of the present case, we note that the award was received approximately one year before the couple divorced. We note also that the purpose of the Workmen's Compensation Act is to assist workers and their families, *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980), and that the Marital Property Act should be construed liberally to effect its broad remedial purpose. *Harper v. Harper,* 294 Md. 54, 64, 448 A.2d 916 (1982). Nonetheless, we hold that only the portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribu-

---

**5.** Article 101, § 36(4) refers to nonscheduled injuries as "other cases." Section 36(4a) includes a third category of permanent partial disability, i.e., a "serious disability." Section 36(4a) states, "A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more under subsections (3) [scheduled injuries] or (4) [nonscheduled injuries] or a combination of both, is thereby considered to have a serious disability; ...."

tion by the trial judge. Due to the personal nature of the injuries giving rise to a permanent partial disability award, we cannot conclude that the General Assembly intended a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage. Because the record before us fails to disclose the information essential to computing the portion of the husband's award, if any, allocable as marital property, we shall remand the case to the trial court for additional fact-finding and disposition consistent with these principles.

### III.

The husband also claims that the trial court erred in awarding custody of the minor son to the wife. Evidence admitted during the hearing indicated that the husband had been seeing another woman for some time during the marriage. A photograph, admitted over the husband's objection, showed him, together with his minor son, both of whom are white, with the husband's female friend, who is black. The husband contends that the trial court showed racial prejudice in referring to his interracial relationship as "irregular" and in denying him custody of his son for that reason.

■ The paramount consideration in child custody awards is the best interests of the child. *See e.g., Carter v. Carter,* 156 Md. 500, 144 A. 490 (1929). In *Hild v. Hild,* 221 Md. 349, 157 A.2d 442 (1960), we said:

"For the purpose of ascertaining what is likely to be in the best interests and welfare of a child a court may properly consider, among other things, the fitness of the persons seeking custody, the adaptability of the prospective custodian to the task, the age, sex and health of the child, the physical, spiritual and moral well-being of the child, the environment and surroundings in which the child will be reared, the influences likely to be exerted on the child, and, if he or she is old enough to make a

rational choice, the preference of the child. 2 Nelson, *Divorce and Annulment*, § 15.01 (2d ed., 1945). It stands to reason that the fitness of a person to have custody is of vital importance. The paramount consideration, however, is the general overall well-being of the child."

*Id.* at 357, 157 A.2d 442. To like effect, *see Montgomery County v. Sanders*, 38 Md.App. 406, 420, 381 A.2d 1154 (1977). *See also Taylor v. Taylor*, 306 Md. 290, 508 A.2d 964 (1986) (factors a trial court should consider in awarding parents joint custody of their children); *Kauten v. Kauten*, 257 Md. 10, 261 A.2d 759 (1970) (custody of an eight-year-old girl, awarded to her mother, held proper even though it placed the child in a family consisting of her and her mother, who were both white, and the mother's other child, whose father was black).

The Supreme Court recently held that remarriage to a person of a different race was not a valid reason to modify an original custody award. *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). In that case, custody of the minor daughter was awarded to the mother upon divorce. Both parents were white. The father later sought modification of the custody arrangement, charging that the mother's cohabitation with a black man, whom she later married, would have a damaging effect on his daughter if she remained in the racially-mixed household. The Court said:

"Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.

... The effects of racial prejudice, however real, cannot justify a racial classification removing an infant child from the custody of its natural mother found to be an appropriate person to have such custody."

466 U.S. at 433, 434, 104 S.Ct. at 1882–1883.

In the present case, there is no indication in the record that the trial court considered the husband's relationship with his female friend to be "irregular" because of its

interracial nature. Rather, the court focused on the fact that the two individuals were not married. Specifically, Judge Bowen said:

"The evidence shows that he is, for all intents and purposes, living as husband and wife with a woman to whom he is not married.... I have not yet and I hope I never live long enough to order into someone's custody a minor child when that person is living openly and flagrantly and visibly in an irregular relationship with a member of the opposite sex.... [T]he law as far as the Court is concerned is that if you want custody of minor children and rear them you must be married. I'm not going to permit you not to be married to somebody and having custody of children."

We abolished the presumption against an adulterous parent in *Davis v. Davis*, 280 Md. 119, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977), *reh. denied*, 434 U.S. 1025, 98 S.Ct. 754, 54 L.Ed.2d 774 (1978). We noted there that a finding of adultery per se is not a highly persuasive indicium of unfitness but is merely one factor that should be weighed, along with all other pertinent factors, only insofar as it affects the child's welfare. *Id.* at 127, 372 A.2d 231. *See also Swain v. Swain*, 43 Md.App. 622, 406 A.2d 680, *cert. denied*, 286 Md. 754 (1979), where the court observed:

"As we read the *Davis* opinion, ... there are now no presumptions whatsoever with respect to the fitness of a parent who has committed, or is committing, adultery. Rather, adultery is relevant *only* insofar as it *actually* affects a child's welfare. We will not presume a harmful effect, and the *mere* fact of adultery cannot 'tip the balance' against a parent in the fitness determination. Thus, a chancellor should weigh, not the adultery itself, but only any actual harmful effect that is supported by the evidence." (emphasis in original).

*Id.* at 629, 406 A.2d 680.

In the case *sub judice* the trial court stated that "but for this irregular arrangement" between the husband and his

friend, "I'm not so sure that the Court wouldn't be satisfied that the father is the best one to have custody of him." The court noted that the husband "has a rapport with his children and they seem to think that he's a caring and feeling person who doesn't play games with their emotions." The lower court thus relied heavily on the mere existence of the husband's relationship with his female friend without assessing whether that relationship would have such a harmful effect on the child as to outweigh other factors in favor of granting custody to the father.

■ It appears that, in part at least, the husband's relationship with his friend was consummated in the District of Columbia where the two lived together periodically. As the District is a jurisdiction that recognizes common law marriages,[6] the husband, following his divorce, might have established a common law marriage in that jurisdiction had the parties continued to live there. The record does not, however, disclose whether the couple held themselves out to the public as being husband and wife. While the common law marriage question was not raised below, such a relationship, if it existed, might not have been deemed "irregular" by the trial judge. In any event, we shall remand the custody issue for a determination of the child's best interests. In reaching its custody determination, the trial court should be guided by the factors we listed earlier, keeping in mind that a parent's past adultery is in any event but one factor and is not, of itself, dispositive.

THAT PART OF THE JUDGMENT DETERMINING THAT THE WORKERS' COMPENSATION AWARD CONSTITUTED MARITAL PROPERTY IN ITS ENTIRETY, AND AWARDING CHILD CUSTODY TO THE WIFE, VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CALVERT COUNTY FOR FURTHER PRO-

---

**6.** *See Matthews v. Britton,* 303 F.2d 408 (D.C.Cir.1962); *McVicker v. McVicker,* 130 F.2d 837 (D.C.Cir.1942); *Hoage v. Murch Bros. Const. Co.,* 50 F.2d 983 (D.C.Cir.1931); *Lee v. Lee,* 201 A.2d 873 (D.C.1964).

CEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE RESULT.