615 A.2d 1205

**Mary Elizabeth HANKE**

v.

**Dan Wolf HANKE.**

**No. 77, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Nov. 25, 1992.

Mercedes C. Samborsky, Joppatowne, for appellant.

No brief or appearance by appellee's counsel.

Submitted before BISHOP, ROSALYN B. BELL and FISCHER, JJ.

ROSALYN B. BELL, Judge.

Appellant, Mary Elizabeth Hanke, brings this appeal, asking us to review an order granting her ex-husband, Dan Wolf Hanke, appellee, overnight visitation with the parties' four-year-old daughter (child). Ms. Hanke's concern for this child stems, in part, from an incident of sexual abuse by Mr. Hanke of one of Ms. Hanke's daughters (stepchild) from a previous marriage. We hold that under the circumstances of this case, overnight visitation is not in the best interests of this child, and reverse the order of the Circuit Court for Harford County dated August 16, 1991.

Ms. Hanke raises three other issues regarding the evidentiary rulings made at the various hearings. Since, however, we have decided that the trial court erred, we need not address any of these evidentiary matters.

## CHRONOLOGY OF THE CASE

On August 1, 1990, Mr. and Ms. Hanke were divorced by a judgment of the Circuit Court for Harford County. Ms. Hanke was granted custody of the parties' child and the issue of Mr. Hanke's visitation privileges was reserved for a later hearing. On March 15, 1991, hearings began to consider visitation. On March 18, 1991, the court ordered unsupervised four-hour visitations on alternate Sunday afternoons from noon until 4:00 p.m. On March 20, 1991, the court ordered Mr. Hanke to submit to a mental health examination by Lawrence Raifman, PhD, J.D.

On May 30, 1991, the Harford County Department of Social Service (DSS) filed a Child in Need of Assistance (CINA) petition based on: (1) a report of sexual abuse of the child filed by Ms. Hanke; (2) the child's disclosure of inappropriate touching by her father; and (3) the results of a medical examination conducted after the report of the abuse. The CINA petition recommended that visitation

between the child and Mr. Hanke be supervised, and concluded that Mr. Hanke should not be alone with the child at any time during the visits. On June 7, 1991, DSS moved to consolidate the CINA petition with the visitation case. On June 11, 12 and 13, 1991, the CINA petition and the visitation matter were heard and the judge ordered the case reviewed in 60 days. On August 16, 1991, the court granted Mr. Hanke overnight visitation with the child.[1] At approximately the same time, Ms. Hanke moved her family from Pennsylvania, where they had been residing since the divorce, to their original home in Kentucky. On October 7, 1991, during a recorded chambers conference, Ms. Hanke telephoned the trial judge to advise the court, under oath, of her whereabouts in Kentucky. She explained to the court that she had to leave her job as a therapist in Pennsylvania because her failing eyesight prevented her from doing the required paper work. She was unable to find employment in the Pennsylvania or Maryland area, and therefore she returned to her home in Kentucky where her family resides.

On January 16, 1992, the Harford County Circuit Court changed the child's custody from Ms. Hanke to the Harford County DSS. In a subsequent order, the court transferred custody to Mr. Hanke and terminated any child support Ms. Hanke was receiving. Around the same time, a Kentucky court ordered the child's custody changed to the Kentucky Department of Social Services. The child is currently in the custody of the Kentucky DSS while that agency investigates Mr. Hanke. The order of the Harford County judge, who transferred custody to Mr. Hanke, has not been enforced, pending the outcome of the investigation by the Kentucky DSS.

## VISITATION

■ Mr. Hanke has admitted sexually abusing his 11–year–old stepchild in 1986. This particular instance of

---

1. At all times relevant to this appeal, Mr. Hanke has resided in Harford County.

sexual abuse was one event, but there is overwhelming evidence that other instances of excessive punishment with sexual overtones had occurred prior to this incident. The stepchild described the sexual abuse which led to criminal charges as follows:

"... July of 1986, my Mom told me to go out to the garagè to tell Dan it was dinnertime. I went into the garage and he closed the door. [H]e said '[stepchild's name] take off your clothes' softly but in a commanding voice. I took my clothes off then he started licking me all over. He licked my vagina first then he inserted his finger into my vagina. (it hurt me). Then he fondled my breasts. While he was doing this he kept telling me, I was special. Then he just stopped. Then he said I could go. I ran to the house and went to my room."

This physical abuse was confirmed by Dr. Raifman, a psychologist who examined Mr. Hanke in response to a court order.

During a therapy session, Mr. Hanke stated that he was drunk when he sexually molested his stepchild. With respect to his abuse of alcohol, Mr. Hanke testified: "On the occasion when I molested [my stepchild], I was drinking heavily, yes, but I do not have an alcohol problem, and I drink occasionally now, by choice." He described his sexual molestation of his stepchild as "using bad judgment." When asked whether "the alcohol influenced your (Mr. Hanke's) judgment sufficiently so that you (Mr. Hanke) committed the sexual abuse?", Mr. Hanke answered: "The alcohol made it easier for me to use bad judgment." Mr. Hanke's "bad judgment" problems, due to the use of alcohol, have never been treated, but nonetheless, Mr. Hanke feels that he does not "need any therapy for alcoholism." He did, however, secure therapy for the sexual abuse incident.

At the time of the separation, Ms. Hanke was pregnant with the parties' child who is the subject of this case. The parties separated as soon as Ms. Hanke learned from the 11–year–old child that she had been sexually molested by

Mr. Hanke.[2]  Criminal charges of sexual molestation were brought against Mr. Hanke for the incident involving his stepchild.  As part of the plea bargain entered into by Mr. Hanke for a suspended sentence in the criminal case, he agreed to, among other things, supervised visitation with the parties' child.

In January of 1990, after the divorce and the sale of the family home in Churchville, Ms. Hanke moved to Pennsylvania with her three daughters.[3]  She lived in Pennsylvania until September of 1990 when she moved to Kentucky. During the time the child and her mother resided in Pennsylvania, there was little, if any, contact between Mr. Hanke and the child until the spring of 1991 when facilitated visitation began.  There has been no visitation since the mother moved with the child to Kentucky in the fall of 1991.

The trial judge granted Mr. Hanke unsupervised four-hour weekly visitation periods with the child, beginning in March of 1991.  After one of these visits, the parties' child reported to a teenage friend of her stepsister that Mr. Hanke "was touching her where he was not supposed to." Ms. Hanke examined the child and found scarring in the genital area.  She immediately reported the matter to the Harford County Department of Social Services (DSS). Based on Ms. Hanke's complaint, DSS had the child examined at Mercy Hospital.  The examination was conducted on May 23, 1991 by Dr. Reichel at the Mercy Hospital outpatient clinic.  His report states as follows:

> "(1) Abnormal Genital Exam consistent with but not conclusive for fondling of external genitalia.  Possible healed genital sexual injury.
>
> "(2) Anal exam is inconclusive.  Prior abuse cannot be excluded."

---

**2.**  There was also evidence that Mr. Hanke had physically and sexually abused Ms. Hanke during their marriage.

**3.**  Ms. Hanke had two daughters by a previous marriage.  There is no evidence that the middle daughter suffered any type of abuse.

Annetta Bloxham, the DSS caseworker investigating the complaint, stated that the parties' child reported that her father "had taken her swimming in a big warm pool" on the second unsupervised visitation (a cold Sunday in early April 1991). This was confirmed by Ms. Hanke. Ms. Bloxham also testified that she had verified the child's report of sexual molestation by Ms. Hanke. Ms. Bloxham was advised by the parents of the teenager, to whom the child had reported the molestation, that the child did indeed report the molestation. This family refused, however, to permit the teenager to testify. The child also reported to Ms. Bloxham and Detective Loughran that there was no bathroom at her father's residence, although there was a bathroom and the child used it. This statement by the child was considered by Ms. Bloxham to be an "avoidance answer," and raised questions as to what was happening in the father's bathroom that the child was afraid to talk about.

Dr. Raifman, who evaluated Mr. Hanke pursuant to a court order, testified that Mr. Hanke stated that he abused his stepchild to "get at her mother"; that the stepchild had been physically abused by Mr. Hanke for a long time before the incident of sexual abuse; that Mr. Hanke should not be placed in a situation where he is alone with his child; that Mr. Hanke should not continue to use alcohol because he was drunk at the time he sexually abused his stepchild; that Mr. Hanke had not come to terms with his abuse of alcohol as a factor in his abuse of his stepchild; and that he still uses alcohol by choice. Dr. Raifman characterized Mr. Hanke as having a "paraphiliac coercive disorder," a child physical abuse pattern characterized by thoughts and behavior of a coercive nature, called frotteurism pedophilia.[4] Dr. Raifman stated that Mr. Hanke's behavior with his stepchild was an example of this inappropriate non-consensual sexual behavior.

---

**4.** At trial, Dr. Raifman defined frotteurism pedophilia as a term used to indicate uninvited rubbing or touching of the victim as a means of obtaining pleasure or erotic value.

Dr. Raifman also testified that Mr. Hanke came from a rigid, tragic, dysfunctional family; that he was angry at women; that he had physically and sexually abused his stepchild for a long period of time; and that this abuse caused her severe psychological problems. Dr. Raifman concluded that Mr. Hanke's visitation with either his child or stepchild should be supervised; that Mr. Hanke should submit to evaluation by a specialist highly trained in pedophilia and sexual problems; that he should get involved in his stepchild's therapy; that he come to terms with what he had done; that Mr. Hanke's understanding of his sexuality and his behavior with his stepchild is not complete; that there is a lack of insight and a minimization of the role alcohol played in that event and still plays in his life today; and that, until these issues are resolved therapeutically, he is at risk and, therefore, his child is at risk.

Ms. Hanke's attorney, the attorney representing the Harford County DSS, and the attorney representing the child were unanimous in their call for supervised visitation. There was, however, also a small amount of contradictory evidence presented, which the judge seemed to favor, that Ms. Hanke was overreacting to the situation and Mr. Hanke was not a potential danger to their child. On March 18, 1991, the court ordered unsupervised visitation and on August 16, 1991, the court ordered visitation overnight, specifying one of four persons who were close to Mr. Hanke to "be present during visitation periods." The judge refused to protect the child further, and he found that overnight visitation was appropriate.

We have reviewed the findings and holdings in this case, bearing in mind that the ultimate test for custody and visitation is the best interests of the child. *Queen v. Queen*, 308 Md. 574, 587–90, 521 A.2d 320 (1987). In most instances the decision of the trial judge is accorded great deference, unless it is arbitrary or clearly wrong. *See Scott v. Prince George's County Dept. of Social Services*, 76 Md.App. 357, 382–83, 545 A.2d 81, *cert. denied*, 314 Md. 193, 550 A.2d 381, *cert. denied*, 492 U.S. 910, 109 S.Ct. 3226,

106 L.Ed.2d 575 (1988). We hold that, given the circumstances presented in this case, the decision of the trial judge was clearly wrong.

It is obvious that the trial judge was annoyed because Ms. Hanke moved to Kentucky with the child and was unwilling to allow visitation.[5] Even if the judge were correct that Ms. Hanke was not acting in compliance with the judge's orders, his primary responsibility was to protect this minor child, and not to punish Ms. Hanke by ordering overnight visitation. Then, when he could not enforce the overnight visitation order, the judge next removed the child from her custody with no provisions to protect the child.[6] Where the evidence is such that a parent is justified in believing that the other parent is sexually abusing the child, it is inconceivable that that parent will surrender the child to the abusing parent without stringent safeguards. The fact that the judge does not agree with that parent's fear is immaterial. This is not a case in which there is no basis for the mother's belief. Past behavior is the best predictor of future behavior, and Ms. Hanke, while perhaps incorrect, is not unjustified in her belief that there may be some unresolved problems.

Assuming without deciding that the trial judge was correct in ruling that the child was at no or minimal risk in the overnight visitation, he abused his discretion in failing to provide a specific place for the supervised visitation designed to protect the child fully with supervisors satisfactory to all parties. He could do no less.

---

**5.** It is also clear from reading the record that the trial judge had no particular fondness for Ms. Hanke's attorney. This may be due in part to a Motion to Recuse filed by Ms. Hanke's attorney prior to the start of the trial, which was denied. Ms. Hanke's attorney and the presiding judge in this case were involved in an encounter in an earlier case which prompted Ms. Hanke's attorney to file the Motion to Recuse.

**6.** At some point in all of this, the trial judge also cancelled the child support.

While no brief was filed on behalf of Harford County DSS or Mr. Hanke, this Court did receive a letter from a staff attorney of the Legal Aid Bureau, Inc., who represented the minor child, suggesting that the attorney supports the relief requested by Ms. Hanke, and asks us to reverse the decision of the Circuit Court for Harford County and remand the matter for further review. We will reverse, but see no reason for a further review, and suggest that any further actions in this case be confined to the courts of Kentucky, which apparently have assumed jurisdiction and where the child has resided since the fall of 1991.

JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE BORNE BY APPELLEE.