Ronald E. STEVENSON

v.

Mercedes STEVENSON.

No. 83–550–Appeal.

Supreme Court of Rhode Island.

June 26, 1986.

---

**3.** This factor differentiates Lussier's plight from that of the defendant in *State v. Timms*, 505

A.2d 1132 (R.I. 1986).

Judith S. Calcagni, Cranston, for plaintiff.

Lawrence P. McCarthy/Gerald C. DeMaria (Higgins Cavanagh & Cooney), Peter S. Haydon (Lipsey & Skolnik, Esquires, Ltd.), Providence, for defendant.

## OPINION

SHEA, Justice.

This is an appeal from a divorce decree entered in the Family Court in which the trial justice granted the husband's petition and the wife's cross-petition for absolute divorce based upon irreconcilable differences that had caused the irremediable breakdown of the marriage.[1] The husband appeals from the court's assignment of property and from the award of alimony and counsel fees to the wife. We affirm in part and reverse in part.

Ronald and Mercedes Stevenson were married on August 14, 1963, and have been separated since July 11, 1982. There are three children of the marriage, two of whom were minors at the time of the court's decision.

Ronald was employed by the city of Cranston as a police officer throughout the course of this approximately nineteen-year-long marriage. In addition, Ronald also worked at several other part-time jobs at various times during the marriage. Mercedes worked primarily as a homemaker, but at times she was employed outside of the home on a part-time basis. She testified that although she had wanted to work longer hours, Ronald had objected because he felt she should be home to greet the children when they returned from school.

Without repeating the extensive testimony presented about the timing and causes of the demise of this marriage, we shall briefly relate the grievances underlying the parties' petitions. Ronald testified to a number of problems in the marriage, some of which he felt were caused by Mercedes. and members of her family who evidently visited frequently and at times moved in with the Stevensons for several months at a time. He also believed that she was too lenient with the children and that she was a poor housekeeper. Mercedes testified that Ronald not only had consented to having her sister move in with them temporarily but had also asked her to do so. Mercedes stated that she was unaware of the sexual problems that Ronald had testified about except to the extent that she would reject his advances when he occasionally drank too much alcohol, and she testified that she suspected that he was having an affair with another woman.

1. All references to the trial justice in this opinion are to the justice who presided at the trial. The final decree was granted by a different Family Court justice.

After reviewing the evidence presented over the course of several days of hearing, the trial justice stated that he found Mercedes's testimony to be very credible and that he found "nothing wrong with the manner in which she conducted her home, her household or took care of the children * * *. In fact, I see nothing in the record to indicate any fault on her part." On the other hand, the trial justice determined that Ronald's occasional drunkenness and his relationship with another woman (regardless of whether it was platonic) were the causes of the marital discord.

On the question of the equitable distribution of the marital property, the trial justice found that there were two assets of substantial value. The first was the marital domicile located in Cranston, Rhode Island, which the trial justice found to be worth $45,000 and upon which there was an outstanding mortgage of approximately $5,000. The second asset was Ronald's pension fund that he had acquired in his service as a police officer employed by the city of Cranston. The pension itself had been admitted into evidence, and Mercedes had called Gerald Boulet, an actuary consultant, to testify about the present value of the pension. Boulet testified that he calculated that value to be $133,232.21. The trial justice rejected this testimony and found that the fund would "yield [husband] half his earnings at a certain age, plus a percentage increase for the years he works." The trial justice assigned the pension to Ronald, stating that it had been taken into consideration as a marital asset for the purposes of equitable distribution. The trial justice then assigned the marital domicile to Mercedes along with the household furnishings, with the exception of a couch and some tools that Ronald had requested. The trial justice also ordered Ronald to continue to pay the mortgage payments and taxes on the property until that obligation is satisfied, and he specified that these payments were to be considered alimony. Thereafter Mercedes would be responsible for the taxes and upkeep of the property. Ronald was ordered to pay to Mercedes $40 per week as additional alimony and $40 per week for the support of each of the two minor children. The trial justice also ordered Ronald to pay Mercedes's counsel fees.

On appeal, Ronald first objects to the trial justice's assignment of property. Ronald contends that the trial justice's finding that Mercedes was without fault is against the weight of the evidence. He next alleges that the trial justice erred in considering the pension fund to be a marital asset subject to equitable distribution because this fund is protected from assignment and attachment by state law and a Cranston city ordinance. Ronald argues that the trial justice erred in limiting his cross-examination of the actuary consultant who had been called to testify about the value of the pension and that there was not enough evidence upon which the trial justice could reasonably have ascertained its value. Asserting that if pensions are to be considered marital property subject to distribution, Ronald contends that only the total amount of his contributions to the fund during the course of the marriage should be deemed available for equitable distribution. Finally, Ronald asserts that the trial justice erred in awarding alimony and counsel fees to the wife without first assessing the reasonable needs of the parties and their relative abilities to pay.

Our equitable-distribution statute, G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1, sets forth guidelines that the trial justice must consider before equitably distributing the marital property. They are "(1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates; and (4) the contribution of either party as a homemaker." *D'Agostino v. D'Agostino*, 463 A.2d 200, 201 (R.I.1983); *see also Sattari v. Sattari*, 503 A.2d 125 (R.I.1986). The "guidelines require that consideration be given to the nature and quality of the marital assets as

well as to each spouse's contribution to the value of the marital property." *Wordell v. Wordell*, 470 A.2d 665, 667 (R.I.1984). The trial justice is vested with wide discretion to divide the marital property justly and fairly between the parties. *Id.* Unless it is shown that the trial justice misconceived relevant evidence or was clearly wrong, this court will not disturb the trial justice's findings, *Sattari v. Sattari*, 503 A.2d 125 (R.I.1986), and *Casey v. Casey*, 494 A.2d 80 (R.I.1985), because as an "appellate tribunal, it is not our function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial." *Id.* at 82.

■ We pause to observe again that the concept of equitable distribution is the product of a transformation in the way that the law has traditionally viewed marriage and treated its dissolution. The courts now recognize that marriage is, among other things, an economic partnership between two people striving to make a better life for themselves. Upon divorce, § 15–5–16.1 provides the factors that enable the court to recognize on a practical level the existence of that partnership, consider each spouse's relative efforts to foster it, and to divide fairly the assets of that joint enterprise. Rather than reduce the marriage to a mere accounting of dollars and cents, however, equitable distribution takes into consideration all of the tangible and intangible contributions each party has made over the course of the marriage. To that end, § 15–5–16.1 requires that financial and domestic contributions be placed in the balance, and we have acknowledged that fairness requires that the "essential supportive role played by a spouse who is not employed outside the home" be recognized as entitling that spouse to a "share of the family assets." *Wordell*, 470 A.2d at 667. Equitable distribution of marital property is intended to be no less than what its title

suggests —a division of property that is equitable to both parties.

Our reading of the record reveals that the trial justice thoroughly examined the evidence relating to each of the statutory factors and that he did so in a well-reasoned manner. We conclude that there was ample evidence to support the trial justice's rulings on credibility and upon which he could base his conclusions relating to fault. Therefore, we find no error in the trial justice's preliminary findings of fact.

There were two major marital assets, the marital domicile and the pension. Ronald's assertion seems to be that because police officers' pensions are protected from attachment or assignment by G.L. 1956 (1985 Reenactment) § 9–26–5,[2] this pension must be treated as separate rather than marital property. It is not clear whether Ronald suggests that all pensions must be held to be separate property. In any event, because this appears to be the first time that this question has been raised before this court, it is appropriate to explore the issue.

Although not cited by the parties, some precedent exists in this state for viewing pensions as marital property subject to equitable distribution. *See Casey v. Casey*, 494 A.2d 80 (R.I.1985) (where husband was awarded a *portion* of a vested pension fund at his former place of employment under the terms of the division of marital assets); *Whited v. Whited*, 478 A.2d 567 (R.I.1984) (where fact that defendant was not awarded an interest in plaintiff's boats, medical equipment, or small *pension* was not an abuse of trial justice's discretion). The propriety of the inclusion of the pensions as marital property, however, was not challenged in those cases.

The law in other equitable-distribution and community-property jurisdictions and the scholarly literature exploring this issue reveals nearly unanimous support for the proposition that pension funds are marital

---

**2.** He also asserts that his police pension is similarly protected by Cranston City Code ch. 24, § 24–26 (1970).

property. *See, e.g., Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981); *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977); *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo.1982); *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W.2d 844 (1981); *Kikkert v. Kikkert,* 88 N.J. 4, 438 A.2d 317 (1981); *Kruger v. Kruger,* 73 N.J. 464, 375 A.2d 659 (1977). Troyan, *Pension Evaluation and Equitable Distribution* 10 Fam.L. Rptr. (BNA) 3001 (Nov. 22, 1983). (For a general overview of this issue, *see* Annot. 94 A.L.R.3d 176 (1979) and cases there cited.) The majority of authorities have rejected arguments that a pension fund is a mere expectancy or gratuity, especially in cases such as this, where the pension fund is contributory and fully vested.[3] Rather, the consensus is that a pension represents delayed compensation for work performed over the course of the marriage; as such it is a "chose in action" or an enforceable contract right and therefore a form of property. One treatise explains the rationale in the weight of authority as follows:

"To the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years." 3 Rutkin, *Family Law and Practice* § 37.07 at 37–81 (1985).

We find this reasoning compelling. We believe that a pension is reasonably analogous in form to a forced savings account whose funds will become available to the parties upon retirement. Consequently, we find that the trial justice correctly considered Ronald's interest in the pension fund to be marital property.[4]

Ronald contends, however, that § 9–26–5 precludes his pension from inclusion as a marital asset upon dissolution. Section 9–26–5 provides in pertinent part that

"[n]o interest of any person in any pension fund or in any pension derivable therefrom, for the benefit of policemen or firemen * * * to which fund such city or town contributes in any way, shall be subject to trustee process or liable to attachment on any writ, original, mesne, or judicial, or be taken on execution or any process, legal or equitable; and no assignment of any such interest shall be valid."

We find this argument unpersuasive. The trial justice's disposition of the fund in his decree in no way altered Ronald's rights in this pension because Mercedes was granted no interest in it. The trial justice simply placed the pension on the scale along with the other marital assets when he weighed and divided them. This decision does not in any sense constitute an assignment within the meaning of § 9–26–5, and we conclude that the trial justice's determination on this point was correct. *See In Re Marriage of Pope,* 37 Colo.App. 237, 544 P.2d 639 (1975) (factually similar case in which court construed the public employees' pension fund anti-assignment provision as not prohibiting trial justice's consideration of husband's pension as marital property without assigning it to the wife because this treat-

**3.** Although we need not so find on the facts of this case, we note that California in one of the leading cases on the topic has gone as far as to hold that an unvested, noncontributory pension plan is subject to division upon dissolution of the marriage. *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976).

**4.** Of course, we are aware that every marital estate is unique and that all pensions are not alike. Consequently, the nature and quality of the pension, like all other marital assets, must be evaluated in the light of the factors set forth in G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1, in order that an equitable division may be achieved.

ment was not an "assignment"). Because the trial justice did not assign Mercedes any interest in this pension, we need not decide whether § 9–26–5 would preclude division of a police officer's pension upon dissolution of the marriage.

Ronald next attacks the trial justice's determination of the value of his interest in the pension, alleging as a subsidiary issue that his cross-examination of the actuary consultant was impermissibly curtailed by the trial justice. He alleges that he was not permitted to cross-examine Boulet about the unassignability of the pension under state law, the source of the funding of the plan, and the amount of Ronald's contribution to the plan. This information, Ronald contends, was necessary in order for the trial justice to make an accurate finding about the value of the pension. We have said that the scope of cross-examination is a matter addressed to the sound discretion of the trial justice and that the admission or exclusion of testimony constitutes reversible error only when the trial justice determines a disputed right on the basis of evidence that was erroneously admitted during the trial. *Whited v. Whited*, 478 A.2d 567 (R.I.1984). We do not believe this to have been the case during this trial. Ronald attempted to ask Boulet about whether he was aware of a state law precluding the attachment and assignment of police officers' pensions. The trial justice correctly determined that this was an irrelevant line of inquiry because the statute had been brought to the court's attention. This was properly a subject for legal argument to the court and not crossexamination of an actuary consultant. When the trial justice asked counsel to explain why she was pursuing this line of inquiry, she replied that she had nothing further to ask of the witness. If there were additional matters such as the source of funding or Ronald's contributions to the fund that counsel wanted to present, she should have made that clear to the trial justice at that time. We note that the trial justice chose to reject all of Boulet's testimony relating to the value of the pension. He based his findings upon his own reading of the plan which had been introduced into evidence. In those cases where it is necessary, we would expect to see matters relevant to the present value of the pension at the time of the marriage's dissolution more fully explored. In this case, however, the plan itself specifies the sources of its funding and the formula through which a retiree's benefits will be calculated. The amount of money that retirees receive is based upon their age and length of service in the department, and it represents a fixed percentage of their rate of pay at the date of retirement.[5] At the time of trial Ronald had served for twenty-one years in the police department, and his interest in the pension is not subject to divestment by death or discharge. Therefore, the trial justice had sufficient evidence before him to make a determination on the pension's value insofar as the requirements of this case are concerned, and we shall not disturb that finding.

5. Cranston City Code ch. 24, § 24–23 provides in pertinent part:

"Method of placing officers or members on pension list—Generally.

(a) Any officer or member of the permanent police department who has been in active service in such department for twenty years or more may apply in writing to the city council to be placed on the pension list, and the city council shall thereupon place such officer or member so applying on the pension list and such officer or member so retired shall then become entitled to the following benefits to be paid from the police pension fund:

(1) If such officer or member so retired has attained the age of fifty-five years, he shall be paid annually for the remainder of his life in equal monthly installments, a sum equal to fifty-five per cent of his annual salary, except as noted below.

(2) If such officer or member so retired has not attained the age of fifty-five years, he shall be paid annually until his fifty-fifth birthday in equal monthly installments a sum equal to one-half of his annual salary; and upon attaining his fifty-fifth birthday, for the remainder of his life, in equal monthly installments a sum equal to fifty-five per cent of his annual salary, except as noted below."

■ Ronald's last argument regarding the pension is that only the total amount of his contributions to the fund over the course of the marriage may be counted as marital property. His argument loses much of its persuasive force when one considers the *nature* and the *quality* of his interest in this pension. As we have already noted, Ronald's interest is fully vested. Were his interest subject to divestment, leaving him nothing more than a return of his actual contributions to the fund, we might well be more responsive to his contention. We believe, however, that limiting its value to that amount in these circumstances would flatly ignore the quality of his interest. Ronald's interest is now much more valuable than the sum of his actual contributions to the fund. Therefore, we conclude that it would be inequitable to view it as worth less than what its present value was at the time of the dissolution of the marriage.

■ We turn now to the alimony and counsel-fees awards. Both awards require the trial justice to evaluate the evidence in view of the factors set forth in § 15–5–16. They are "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and [4] the state and the liabilities and needs of each of the parties." Section 15–5–16. Alimony is intended to be a rehabilitative tool that is based upon need and that will allow the recipient to become self-sufficient. *Casey v. Casey*, 494 A.2d 80 (R.I. 1985); *D'Agostino v. D'Agostino*, 463 A.2d 200 (R.I.1983). The award should be payable for a relatively short and definite period that is reasonably calculated to allow the recipient to become financially independent. *Casey*, 494 A.2d at 83. Therefore, so-called open-ended alimony awards that are not terminable when the recipient achieves the position of self-support are improper. *Id.*

In this case, we believe that the trial justice's award of alimony should have been supported by an explanation of its duration and its purpose. Because the alimony award was open ended and no assessment of the parties' needs was made and, furthermore, because Mercedes was employed and earning $135 per week at the time of trial, we remand the issues of alimony and counsel fees[6] for reconsideration in light of our discussion and the factors contained in § 15–5–16.

For these reasons, the plaintiff's appeal is denied in part and sustained in part. The papers of this case are remanded to the Family Court for reconsideration of the alimony and counsel-fees awards in light of this opinion.

---

6. It is now well established that before awarding counsel fees, the trial justice must determine that the party seeking the award is without funds or property available to pay the fees and that the spouse who will be charged with payment of the fees has the financial ability to satisfy the obligation. *Sattari v. Sattari*, 503 A.2d 125 (R.I.1986); *Casey v. Casey*, 494 A.2d 80 (R.I.1985); *Tarro v. Tarro*, 485 A.2d 558 (R.I. 1984); *Paradiso v. Paradiso*, 122 R.I. 1, 404 A.2d 60 (1979).