Camille E. ALLARD

v.

Albert R. ALLARD.

No. 96–427–Appeal.

Supreme Court of Rhode Island.

March 25, 1998.

Douglas James Rose and Robert A. Mitson, Woonsocket, for Plaintiff.

Gerald M. Brenner, Woonsocket, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

■ This case comes before us on appeal by Albert R. Allard (Albert) from an order of the Family Court denying, in part, his motion to modify the final decree of divorce ordering him to pay a percentage of his weekly disability benefits to his former spouse Camille E. Allard (Camille). The issue is whether a disability pension is subject to equitable distribution to the extent that it represents an employed spouse's vested retirement pay earned during the marriage. We are of the opinion that it is, and for the reasons set forth below, we affirm the judgment of the Family Court. The undisputed facts underlying this appeal are as follows.

Albert and Camille were married on November 11, 1972. On December 8, 1974, Albert was hired as a firefighter/rescue worker by the Woonsocket Fire Department. On March 15, 1991, the Family Court grant-

ed Albert and Camille an absolute divorce on the ground of irreconcilable differences. The final judgment of divorce was entered on June 24, 1991. At that time the three children born of the marriage were minors residing with Camille. Presently one minor child lives with Camille and is supported by Albert. The parties' two other children are emancipated.

Pursuant to the terms of the final judgment of divorce Camille was given the option to sell the marital domicile, the net proceeds of which were to be divided between Camille and Albert, sixty-five percent and thirty-five percent, respectively. The final judgment also awarded Camille one-half of the value of Albert's pension plan, which he maintains through his employer, the City of Woonsocket Fire Department. Albert had contributed to the retirement pension out of the couples' marital assets throughout the parties' eighteen-year marriage. The terms of the judgment provided that Albert was to pay Camille one-half the present value of his retirement pension evaluated as of March 15, 1991, from his share of the proceeds of the sale of the marital domicile. Mark B. Magnus, an actuary hired by Camille, calculated the present value of Albert's twenty-year-retirement pension to be $167,098. Half that sum, or $83,549, represents the amount to which Camille is entitled pursuant to the terms of the final judgment of divorce.

On May 18, 1994, Albert and Camille entered into a consent decree wherein Albert conveyed his interest in the marital domicile to Camille in return for a $35,500 credit toward the dollar amount owed from his pension plan. According to the terms of the consent decree the city of Woonsocket would pay to Camille twenty-nine percent of Albert's monthly pension payments when Albert began receiving such payments until the balance of $48,000 was paid.

On July 29, 1994, Albert suffered a job-related injury. On January 29, 1995, the mayor of the city of Woonsocket granted Albert's request for a disability-retirement pension. Albert had nonetheless become eligible to apply for a twenty-year-retirement

pension fifty-two days earlier. Had Albert retired without a disability in January 1995, he would have received a pension equal to sixty percent of his weekly pay, and Camille would have been entitled to receive one-half of that weekly sum until the balance owed to her pursuant to the consent decree was paid. By qualifying for a disability-retirement pension, Albert took payments equal to 66 2/3 percent of his weekly salary, or $52.15 per week more than what he would have received in straight retirement pay. The disability payments received by Albert may enjoy certain tax advantages.

On April 11, 1995, Albert moved to modify the final judgment of divorce, seeking in part to avoid payments to Camille of a percentage of his retirement pension on the basis that he is receiving a disability pension not subject to equitable distribution. He also sought reimbursement of $35,500—his interest in the marital domicile conveyed to Camille in return for a reduced interest in his retirement pension, which Albert claims no longer exists. On September 7, 1995, the Family Court entered a decision finding Camille entitled to fifty percent of the value of Albert's retirement pension evaluated as of March 15, 1991, reduced by the $35,500 credit Albert received for his interest in the marital domicile. On October 6, 1995, an order was entered in accordance with the Family Court's decision, to which Albert objected. The order was temporarily stayed until February 12, 1996, when the Family Court overruled the objection and reinstated the order, nunc pro tunc. Albert then filed a timely appeal to this court.

On appeal Albert asserts that his entire disability pension is his separate property under our decision in *Thompson v. Thomp-son*, 642 A.2d 1160 (R.I.1994), and, therefore, the trial justice erred in awarding Camille an interest in any portion of his pension. The sole purpose of a disability pension, he contends, is to compensate the employee spouse for lost earning capacity and is thus "totally differentiated" from the function of a retirement pension. We are of the opinion, however, that defendant assigns to *Thompson* a meaning more sweeping than its holding, which we find not dispositive of the rights of the parties in this case.

In *Thompson* this court drew a distinction between a contributory retirement pension, which is subject to equitable distribution under G.L.1956 § 15–5–16.1, and a "true" disability pension, which is not.[1] *Thompson,* 642 A.2d at 1164. In that instance we held that the trial master improperly considered the husband's disability pension marital property and erred by awarding the wife a sixty-five percent interest in it. *Id.* at 1163–64. The husband began receiving disability payments in 1975 after suffering a job-related injury as a firefighter with the City of Warwick Fire Department. *Id.* at 1163. He had been employed by the department for only ten years. *Id.* For the next seventeen years the husband's biweekly disability payments were used to pay household expenses and to increase the marital estate. *Id.* On December 8, 1992, the Thompsons divorced. On the basis of these facts we concluded that the husband's disability payments were not equivalent to contributory retirement benefits. *Id.* at 1164. In a contributory retirement pension the "family loses its ability to spend a portion of its income when that income is deferred and placed in a pension." *Moran v. Moran,* 612 A.2d 26, 33 (R.I.1992)

1. General Laws 1956 § 15–5–16.1 provides in pertinent part:

"**Assignment of property.**—(a) In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other.
\* \* \*
(b) The court may not assign property or an interest therein held in the name of one of the parties if the property was held by the party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage, and the court may assign

the appreciation of value from the date of the marriage of property or an interest therein which was held in the name of one party prior to the marriage which increased in value as a result of the efforts of either spouse during the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during, or after the term of the marriage. The court shall not assign property or an interest therein which has been transferred to one of the parties by gift from a third party before, during, or after the term of the marriage."

(quoting *Young v. Young*, 507 Pa. 40, 488 A.2d 264, 269 (1985)). It is tantamount to a forced savings account whose funds become available upon retirement. *Stevenson v. Stevenson*, 511 A.2d 961, 965 (R.I.1986).

"To the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years." *Id.* (quoting 3 Rutkin, *Family Law and Practice* § 37.07[1] at 37–81 (1985)).

Conversely, the disability payments at issue in *Thompson* were used by the parties throughout their marriage to increase the marital estate. 642 A.2d at 1163. To the extent that such benefits were put into savings or were used to purchase property during the marriage, those assets were divisible at dissolution. Adopting the reasoning expressed in *Ciliberti v. Ciliberti*, 374 Pa.Super. 228, 542 A.2d 580 (1988), this court held that Thompson's pension payments were true disability benefits intended to compensate him for personal suffering caused by the disability and for lost earning capacity. *Thompson*, 642 A.2d at 1163–64. The benefits that were paid to Thompson were in lieu of earnings that would have been paid to him if he had been able to work and could have been terminated if he lost his disabled status.[2] *Id.* at 1163 (citing *Ciliberti*, 542 A.2d at 582).

▪ Therefore, of the functions disability pensions potentially serve an employee, we implicitly found only two served by Thompson's disability pension: (1) compensation for personal suffering and (2) compensation for lost earnings resulting from a diminished

ability to compete in the employment market. *Thompson*, 642 A.2d at 1163–64. To the extent that the disability pension compensates the recipient for lost earning capacity and suffering caused by the disability, it is the sole and separate property of the employee spouse and is not subject to equitable distribution. *Id.*; *see also Ciliberti*, 542 A.2d at 582.[3]

At the same time we recognized that a disability pension may serve to replace a retirement pension "by providing support for the disabled [employee] and his [or her] family after he [or she] leaves the job." *Thompson*, 642 A.2d at 1164 (quoting *Ciliberti*, 542 A.2d at 582). In *Ciliberti* the Pennsylvania Superior Court declined to hold that true disability benefits are marital property subject to equitable distribution but went on to say that when it can be shown that a portion of an employee spouse's disability pension represents retirement benefits, the amount received by the disabled employee in lieu of retirement benefits remains marital property subject to distribution. 542 A.2d at 582. Clearly, as the employee spouse approaches retirement, this component may become the predominate function served by the disability pension. *See In re Marriage of Stenquist*, 21 Cal.3d 779, 148 Cal.Rptr. 9, 14, 582 P.2d 96, 101 (1978).

In the present case Albert possessed the option of electing either of two retirement programs. The disability pension offered not only greater benefits but also payments free from taxation. Albert did not begin to receive his disability pension until after he was entitled to receive a twenty-year-retirement pension. In these circumstances the disability pension's function to compensate Albert for lost earning capacity and personal suffering is additional to the objective of providing retirement support. As explained by the Supreme Court of California in comparable circumstances:

2. In the present case, even if defendant is divested of his disability pension, he is entitled to receive benefits equal to sixty percent of his weekly income pursuant to his twenty-year-retirement pension.

3. Such benefits are nonetheless to be considered by the Family Court as a source of income from which alimony and child-support orders can be paid. *Thompson v. Thompson*, 642 A.2d 1160, 1164 (R.I.1994).

"[W]here the employee spouse elects to receive disability benefits in lieu of a matured right to retirement benefits, only the net amount thus received over and above what would have been received as retirement benefits constitutes compensation for personal anguish and loss of earning capacity and is, thus, the employee spouse's separate property. The amount received in lieu of matured retirement benefits remains * * * property subject to division on dissolution." *In re Marriage of Stenquist,* 148 Cal.Rptr. at 14, 582 P.2d at 101 (quoting *In re Marriage of Mueller,* 70 Cal.App.3d 66, 137 Cal.Rptr. 129, 132 (1977)).

Many other jurisdictions are in accord. *Villasenor v. Villasenor,* 134 Ariz. 476, 657 P.2d 889 (Ariz.App.1982); *Dunn v. Dunn,* 35 Ark.App. 89, 811 S.W.2d 336 (1991); *In re Marriage of Stenquist,* 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978); *Freeman v. Freeman,* 468 So.2d 326 (Fla.Dist.Ct.App. 1985); *Gilbert v. Gilbert,* 442 So.2d 1330 (La. Ct.App.1983); *Queen v. Queen,* 308 Md. 574, 521 A.2d 320 (1987); *Avallone v. Avallone,* 275 N.J.Super. 575, 646 A.2d 1121 (1994); *West v. West,* 115 A.D.2d 601, 496 N.Y.S.2d 263 (1985); *Newell v. Newell,* 121 Misc.2d 586, 468 N.Y.S.2d 814 (Sup.Ct.1983); *In re Hoag and Hoag,* 122 Or.App. 230, 857 P.2d 208 (1993); *Ciliberti v. Ciliberti,* 374 Pa.Super. 228, 542 A.2d 580 (1988); *Nuss v. Nuss,* 65 Wash.App. 334, 828 P.2d 627 (1992). A compelling rationale underlying this weight of authority is the principle that one spouse should not be allowed to defeat the other spouse's interest in an asset earned and accumulated during the marriage by invoking a condition wholly within his or her control. *See, e.g., In re Marriage of Stenquist,* 148 Cal.Rptr. at 14–15, 582 P.2d at 101–02; *Avallone,* 646 A.2d at 1125. We find this reasoning persuasive. If we were to reject this rationale and adopt the approach urged by defendant, Camille would be deprived of a share in her husband's retirement pension that for over eighteen years had been funded by the parties' marital assets. Such an outcome runs counter to our recognition that marriage is, among other things, an economic partnership and that pension benefits can be one of the largest assets of that partnership.

*Stevenson,* 511 A.2d at 964. Indeed the very purpose of our equitable-distribution statute would be defeated because the Family Court would be precluded from providing "a fair and just assignment of the marital assets * * * on the basis of the joint contribution of the spouses to the marital enterprise." *Stanzler v. Stanzler,* 560 A.2d 342, 345 (R.I. 1989).

The defendant, on the other hand, would have us believe that culling the retirement component from his disability pension is contrary to our decision in *Kirk v. Kirk,* 577 A.2d 976 (R.I.1990). In *Kirk,* however, this court examined the purpose of a personal-injury settlement in determining whether any portion thereof was subject to equitable distribution under § 15–5–16.1. *Id.* at 977. In doing so, we concluded that components of the settlement that compensate a spouse for losses that have depleted funds of the marital estate, such as lost wages and uninsured medical expenses incurred during marriage, are marital assets subject to distribution. *Id.* at 978. Conversely that portion of the settlement compensating the injured spouse for pain and suffering is nonmarital property not subject to distribution. *Id.* Similarly, losses incurred after entry of final divorce, including future loss of wages, future medical expenses, and future loss of earning capacity, are the injured spouse's separate property and are not divisible. *Id.* at 978–79. Workers' compensation benefits likewise constitute marital property to the extent that they compensate for lost wages and medical expenses incurred during the marriage. *Id.* at 979. However, payments that compensate for disfigurement, loss of a limb, lost future wages, or lost future medical expenses are property of the injured spouse. *Id.* In a manner consistent with this analysis we conclude today that only that portion of defendant's disability pension attributable to his retirement pay is marital property subject to equitable distribution. Anything in excess of that amount represents compensation for defendant's disability and lost earning capacity and is his separate property not subject to distribution under § 15–5–16.1.

■ Our equitable-distribution statute requires us to examine the nature and the quality of the assets of the marital enterprise and each spouse's contribution to that enterprise before a division of property equitable to both parties is made. *Thompson,* 642 A.2d at 1162; *Stevenson,* 511 A.2d at 965 n. 4. The Family Court justice is vested with broad discretion to divide the marital property justly and fairly between the parties, and unless he or she misconceives material evidence or is otherwise clearly wrong, this court will not disturb his or her findings on appeal. *Thompson,* 642 A.2d at 1162; *Stevenson,* 511 A.2d at 964. In this instance we are of the opinion that the trial justice properly apportioned defendant's pension benefits. He first determined the present value of defendant's twenty-year-retirement pension as of the time final judgment of divorce entered. He then calculated Camille's share of the retirement pension. This sum was later reduced by $35,500 pursuant to the parties' consent decree. The balance remaining represents Camille's interest in the retirement portion of defendant's disability pension, which is to be paid to Camille in monthly increments equal to twenty-nine percent of defendant's monthly disability payments. In light of these circumstances we find no error in the determinations made by the trial justice.

Albert next contends that the trial justice erred in awarding to Camille a percentage of his disability pension because pursuant to G.L.1956 § 9–26–5 a firefighter's disability pension is statutorily exempt from attachment.[4] We do not agree.

■ Section 9–26–5 does not preclude the Family Court from awarding Camille an interest in the retirement portion of defendant's disability pension because the antiattachment statute is designed to protect pension funds from creditors and not from the families of employees. *See Duke v. Duke,* 675 A.2d 822, 823 (R.I.1996); *Moran,* 612 A.2d at 33.

Previously we have held that the provision of § 9–26–5 cannot operate to preclude a police officer's pension from being considered marital property for the purposes of equitable distribution. *Stevenson,* 511 A.2d at 965. In *Stevenson* we noted that the pension was analogous in form to a forced savings account by means of which the employee and his family deferred compensation for the purpose of their future financial security and, therefore, should be considered marital property subject to division. *Id.* Subsequently we applied this same rationale to firefighters' pensions. *Duke,* 675 A.2d at 823. Specifically we held that the antiattachment statute cannot prohibit the Family Court from ordering a spouse to fulfill his or her support obligations.[5] *Id.*

Likewise in *Moran* this court held that a municipal-retirement pension was not exempt from equitable distribution upon divorce by virtue of G.L.1956 § 36–10–34. *Moran,* 612 A.2d at 33. Section 36–10–34, like § 9–26–5, purports to exempt from attachment state and municipal employees' retirement benefits.[6] The applicable principle, we held, has been explained by the Pennsylvania Supreme Court with particular acuity:

"It would be terribly unfair to read an exemption statute, which was created to protect a pension for the benefit of a retired employee's family, in such a way that

4. General Laws 1956 § 9–26–5 provides in pertinent part:
   "No interest of any person in any pension fund or in any pension derivable therefrom, for the benefit of police officers or firefighters * * * by any city or town * * * to which fund the city or town contributes * * * shall be subject to trustee process or liable to attachment on any writ, original, mesne, or judicial, or be taken on execution or any process, legal or equitable; and no assignment of any such interest shall be valid."

5. It should be noted that in *Duke v. Duke,* 675 A.2d 822, 824 (R.I.1996), we modified the order of the Family Court to avoid direct attachment of the pension funds by directing the court to order the employee spouse to assign funds to his former spouse.

6. General Laws 1956 § 36–10–34 provides in pertinent part:
   "**Exemption of benefits and contributions from attachment.**—Any and all retirement benefits and contributions in the state employees' and municipal employees' retirement systems shall be exempt from lien, attachment, or garnishment and shall not be transferable or assignable."

the exemption would bar children or a former spouse from receiving support from the very fund created for their benefit, and would once again deny them the benefits of the income they sacrificed to a pension years before." *Moran,* 612 A.2d at 33 (quoting *Young,* 488 A.2d at 269).

We find this reasoning persuasive and conclude that § 9–26–5 does not preclude the Family Court from ordering the defendant to pay a percentage of his disability benefits to his former spouse.

For the reasons stated, the defendant's appeal is denied and dismissed and the order declining to modify the final judgment entered by the Family Court is affirmed. The papers in the case may be remanded to the Family Court.

BOURCIER, J., did not participate.