Hillsborough-northern judicial district
No. 98-383

KIMBERLY M. FABICH

v.

ROBERT A. FABICH, SR.

December 30, 1999

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the plaintiff.

*Braiterman Law Offices,* of Concord (*John D. Cameron* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Robert A. Fabich, Sr., appeals the order of the Superior Court (*Abramson,* J.) distributing the parties' marital property, *see* RSA 458:16-a (1992), in a divorce proceeding filed by the plaintiff, Kimberly M. Fabich. We reverse and remand.

The parties were married on October 25, 1980. That same year, the defendant became employed by the Hampton Police Department and, during the course of the marriage, was employed as a firefighter in Hampton, North Hampton, and Bedford. The plaintiff filed a libel for divorce in July 1995, citing irreconcilable differences which have caused the breakdown of the marriage. *See* RSA 458:7-a (1992) (amended 1998). During the divorce proceedings, the plaintiff sought one-half of the defendant's interest in the New Hampshire Retirement System (retirement system), *see* RSA ch. 100-A (1990 & Supp. 1999), as part of the parties' property settlement.

The defendant began his participation in the retirement system in 1980, and remained in the system during the entire course of the marriage. *Cf. Holliday v. Holliday,* 139 N.H. 213, 217, 651 A.2d 12, 15 (1994) (for purposes of property distribution, relevant period of employment in pension system is from the date of marriage to the date divorce proceedings began). After the plaintiff filed her libel for divorce, however, the defendant was injured at work and deemed to be permanently disabled. The defendant applied for and received accidental disability retirement benefits from the retirement system effective January 1997. *See* RSA 100-A:6, II (1990 & Supp. 1997) (amended 1997, 1999). During the divorce proceedings, the defendant contended that the plaintiff was not entitled to collect one-half of the defendant's monthly accidental disability retirement benefit. He asserted that those payments were not "pension" benefits that would be divisible marital property, *see* RSA 458:16-a, I, but rather were compensation for the lost income that he would have earned had he not been disabled. Thus, he argued that his disability payments could be considered in the calculation of only alimony and support obligations. *See* RSA 458:17, :19 (1992 & Supp. 1999). The superior court disagreed, concluding that his entire monthly benefit was attributable to the marital estate and subject to equitable distribution. Accordingly, the court ordered the defendant to pay one-half of his monthly accidental disability benefits to the plaintiff as part of the parties' property settlement. This appeal followed.

On appeal, the defendant contends that the superior court erred in concluding that his accidental disability benefits constitute

marital property and that the court's distribution of the parties' assets was inequitable. "[T]rial courts are afforded broad discretion in divorce matters," *Magrauth v. Magrauth*, 136 N.H. 757, 760, 622 A.2d 837, 838 (1993) (quotation omitted), and we will not overturn the trial court's rulings regarding property settlement absent an abuse of discretion, *see Rothbart v. Rothbart*, 141 N.H. 71, 74, 677 A.2d 151, 153 (1996), or error of law. *See Hillebrand v. Hillebrand*, 130 N.H. 520, 522-23, 546 A.2d 1047, 1048 (1988). Because we agree with the defendant that the superior court erred in attributing his entire accidental disability benefit to the marital estate, we reverse and remand.

The question of whether disability retirement benefits constitute a pension divisible as marital property, or compensation that is not part of the marital estate, is one of first impression in this State. Jurisdictions that have considered the issue are divided. *See Thompson v. Thompson*, 642 A.2d 1160, 1163 (R.I. 1994) (collecting cases). Some jurisdictions conclude that disability retirement benefits are earned over the course of the marriage, and thus the payments represent foregone wages that are properly part of the marital estate. *See, e.g., Lookingbill v. Lookingbill*, 483 A.2d 1, 4 (Md. 1984). Others deem such benefits to be compensation for lost earning capacity and for pain and suffering, and thus constitute the separate property of the disabled spouse. *See, e.g., Christmas v. Christmas*, 787 P.2d 1267, 1268 (Okla. 1990). A significant number of jurisdictions, after reviewing the respective merits of these two methods, *see, e.g., In re Marriage of Saslow*, 710 P.2d 346, 351-52 (Cal. 1985), employ a functional approach. Depending on the circumstances surrounding the award of the pension, these courts may apportion part of the benefits received as retirement pay to the marital estate and deem the rest to be compensation that is separate property. *See, e.g., Johnson v. Johnson*, 450 S.E.2d 923, 926-27 (N.C. Ct. App. 1994). Courts employing this functional approach have not hesitated, however, to conclude that an employee spouse's entire disability pension is truly compensatory and thus is separate property available for the calculation of only support and alimony obligations. *See, e.g., In re Marriage of Anglin*, 759 P.2d 1224, 1229 (Wash. Ct. App. 1988).

We conclude that the functional approach is the most reasonable and best comports with our view that there be an equitable division of the parties' property during dissolution proceedings. *Cf.* RSA 458:16-a, II; *Hanson v. Hanson*, 121 N.H. 719, 720, 433 A.2d 1310, 1311 (1981) (marital property to be divided in a "just" manner, according to the "equities of the circumstances").

First, the functional approach will result in the fairest distribution of disability benefits. If the employee spouse can demonstrate that the benefits received are "true disability benefits" intended only to compensate for lost earning capacity and personal pain and suffering, a court may not deem such payments to be marital property subject to equitable dissolution simply because the statute employs the term "pension" for a payment that is personal to the employee spouse. *See Ciliberti v. Ciliberti*, 542 A.2d 580, 582 (Pa. Super. Ct. 1988). Moreover, the functional approach guards against a potential abuse of the retirement system, whereby an employee spouse chooses to receive disability benefits in lieu of a matured right to retirement benefits, and deprives the non-employee spouse of his or her "interest in an asset earned and accumulated during the marriage by invoking a condition wholly within [the employee spouse's] control." *Allard v. Allard*, 708 A.2d 554, 558 (R.I. 1998); *see Avallone v. Avallone*, 646 A.2d 1121, 1125 (N.J. Super. Ct. App. 1994); *Saslow*, 710 P.2d at 350; *cf.* RSA 100-A:6, I(b), II(b). An inflexible rule that disability pension benefits are always income and never contain a retirement component "would have the effect of permanently depriving [the non-employee spouse] of any share of [the employee spouse's] pension. That would run counter to our recognition that marriage is, among other things, an economic partnership and that pension benefits can be one of the largest assets of that partnership." *Avallone*, 646 A.2d at 1125.

Furthermore, the functional approach is consistent with our statutes and case law, which emphasize the importance of giving trial courts the flexibility to make *equitable* decisions on matters of dissolution. *See* RSA 458:16-a, II; *Rothbart*, 141 N.H. at 76-77, 677 A.2d at 154 (court, in the exercise of its equitable powers, need not strictly apply common law formula to value pensions); *Rahn v. Rahn*, 123 N.H. 222, 225, 459 A.2d 268, 269 (1983) ("marital property is to be divided not by some magic formula," but in a just manner) (decided under prior law). Our dissolution statutes do not require the court to divide property equally. *See* RSA 458:16-a. Rather, the court "must apportion the estate according to the equities of the circumstances." *Hanson*, 121 N.H. at 720, 433 A.2d at 1311; *see Rothbart*, 141 N.H. at 76, 677 A.2d at 154. Thus, our statutes and case law evince "a wise legislative recognition of the fact that the establishment of hard and fast rules in this area would only lead to inequities and untenable results as the myriad of possible situations came before the courts." *In re Marriage of Kittleson*, 585 P.2d 167, 172 (Wash. Ct. App. 1978).

Finally, the functional approach best reflects the reality that

> disability benefits may serve multiple purposes. They may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market. Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability. Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker and his family after he leaves the job.

*Ciliberti*, 542 A.2d at 582; *see Kittleson*, 585 P.2d at 171-72. Thus, "[t]o the extent that the disability pension compensates the recipient for lost earning capacity and suffering caused by the disability, it is the sole and separate property of the employee spouse and is not subject to equitable distribution." *Allard*, 708 A.2d at 557. It is available, however, to determine support and alimony obligations of the disabled spouse. *See Thompson*, 642 A.2d at 1164; *cf.* RSA 458:17, :19. Where the payments more closely resemble a retirement benefit, however, "the amount received by the disabled employee in lieu of retirement benefits remains marital property subject to distribution . . . [and] as the employee spouse approaches retirement, this component may become the predominant function served by the disability pension." *Allard*, 708 A.2d at 557 (citation omitted).

In its order, the superior court implicitly recognized the dual purpose of disability retirement pensions, but nonetheless attributed the defendant's entire pension to the marital estate. Accordingly, we next determine whether the superior court properly concluded that the disability benefits were "entirely attributable to his retirement pay."

The defendant, as a firefighter, was categorized as a "group II" state employee for purposes of collecting benefits under the retirement system. *See* RSA 100-A:1, X (1990). Group II employees may be eligible to collect: (1) service retirement benefits based on their age and length of service, RSA 100-A:5, II; (2) ordinary disability retirement benefits, which vest after ten years of service and may only be collected after a showing of medical disability, RSA 100-A:6, II(a), (b); and (3) accidental disability retirement benefits based on the occurrence of an accidental injury at work, RSA 100-A:6, II(c). Length of service is not a factor in determining an entitlement to accidental disability benefits; rather, it affects only the calculation of the benefit. RSA 100-A:6, II(d).

The defendant was awarded accidental disability benefits. RSA 100-A:6, II(c) (Supp. 1997) (amended 1999). As such, he was eligible

for benefits because he was "totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty," regardless of his length of service. *Id.* His benefits equaled two-thirds of his "average final compensation" at the time of his disability retirement, RSA 100-A:6, II(d) (1990). His "average final compensation" was based on his average annual compensation during the "highest 3 years of creditable service." RSA 100-A:1, XVIII (1990). Thus, the amount of his benefits are not dependent on the aggregate of his contributions to the system. Furthermore, at the time of disability, the defendant was ineligible for service retirement because he had not satisfied the statutory criteria of reaching age sixty, or of being at least age forty-five with a total of twenty years service. *See* RSA 100-A:5, II.

"[T]he key to determining whether benefits are separate property rather than marital property is to ask what [the defendant's] benefits were intended to replace." *Johnson,* 450 S.E.2d at 925. The defendant contends that because his accidental disability benefits were designed to replace lost income due to his disability, the superior court erred in attributing the entire award to the marital estate. We agree. The defendant's benefits were for accidental disability, not ordinary disability, indicating that his benefits were not based on his length of service to the State or to replace compensation deferred during his employ, *cf. Newell v. Newell,* 468 N.Y.S.2d 814, 815-17 (Sup. Ct. 1983) (because employee was eligible for service retirement at time of disability, portion of disability payment attributable to longevity is part of marital estate), but were at least in part to compensate for lost future income due to his injury. *See Dolan v. Dolan,* 583 N.E.2d 908, 910 (N.Y. 1991) (noting distinction between ordinary disability retirement and accidental disability retirement, and concluding that benefits awarded under ordinary disability pension included compensation for length of service and for injury). The benefits were instead based upon an average income stream, evidencing at least in part an intention to replace lost income. *Cf. Johnson,* 450 S.E.2d at 926.

■  Finally, the defendant's benefits are contingent upon the fact that he is unable to work, and may be revoked if he should no longer be permanently disabled. RSA 100-A:6, III; *cf. Anglin,* 759 P.2d at 1228-29 (finding benefit not marital property where benefit may be revoked if employee is no longer disabled). If the defendant were receiving a service retirement pension, his benefits would be irrevocable. RSA 100-A:5, II. The defendant, however, is not now eligible for such benefits. *Id.; cf. Allard,* 708 A.2d at 557-58 (where

beneficiary had option to elect either service or disability retirement pension, court concluded that pension's function was both to compensate for lost earning capacity and to provide support in retirement). Accordingly, we conclude that the superior court erred by attributing the defendant's entire disability benefit to the marital estate, and we reverse and remand for further proceedings.

The plaintiff contends that a finding that any part of the defendant's disability pension benefits is separate property would render the retirement system unconstitutional. Part I, Article 36 of the New Hampshire Constitution provides: "Economy being a most essential virtue in all states, especially in a young one, no pension shall be granted, but in consideration of actual services; and such pensions ought to be granted with great caution, by the legislature, and never for more than one year at a time." We have concluded that under Part I, Article 36,

> [p]ensions are not to be granted except in consideration of actual services and never for more than one year at a time. A pension ordinarily suggests the idea of a bounty or reward for service rendered, but the term may include a grant which was a mere gratuity. Such a grant is expressly excluded. Pensions are not to be granted except in return for services which are fairly describable as actual, not constructive, or imaginary.

*Opinion of the Justices*, 78 N.H. 617, 618, 100 A. 49, 50 (1917) (citations omitted). The plaintiff contends that if we construe any part of the defendant's accidental disability pension as income that is not part of the marital estate, then the defendant is receiving an unconstitutional pension because it is not service based. We disagree. The defendant receives accidental disability retirement benefits because of his service to the State. *See* RSA 100-A:6, II(c). The fact that they may be, in constitutional terms, pension benefits arising from State service, however, does not mean that we must conclude that they are entirely attributable to the marital estate. As recognized above, such benefits often serve multiple purposes, *see Kittleson*, 585 P.2d at 171-72, and our task is to fashion a rule of property dissolution that is consonant with that reality. Accordingly, although we conclude that the defendant's accidental disability payments are partly compensatory in nature and thus not part of the marital estate, those benefits do not constitute payment of "boons, bounties and favors" to the defendant in violation of Part I, Article 36. *Opinion of the Justices*, 117 N.H. 409, 411, 373 A.2d 1323, 1324 (1977) (quotation omitted).

·We reverse the decision of the trial court that the defendant's accidental disability payments are entirely attributable to the marital estate and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.