Merrimack
No. 98-314

## DEBRA RATTEE

v.

## STEVEN RATTEE

February 15, 2001

*McSwiney, Semple, Bowers & Wise, P.C.*, of Concord (*Patrick J. Sheehan* on the brief and orally), for the plaintiff.

*Stein, Volinsky & Callaghan, P.A.*, of Concord (*Robert A. Stein* and *Heather E. Krans* on the brief, and *Ms. Krans* orally), for the defendant.

BROCK, C.J. The defendant, Steven Rattee, appeals and the plaintiff, Debra Rattee, cross-appeals the terms of their divorce decree recommended by the Master (*Nancy J. Geiger*, Esq.) and approved by the Superior Court (*McGuire*, J.). We affirm in part, reverse in part, and remand.

The parties married in 1974. Throughout the marriage, the defendant worked for Capitol Fire Protection Company, Inc. (the company), a business founded by his father in 1963. He is the company's president and owns 49.6% of its stock. His mother owns the controlling interest of 50.4%. The defendant has earned income ranging from a high of $577,800 in 1990 to a low of $255,636 in 1996. The plaintiff stayed at home during the marriage with the parties' three children, born in 1975, 1978, and 1982.

The parties separated in October 1994, and the plaintiff filed a libel for divorce in May 1995. In July 1995, the parties entered into a temporary stipulation, pursuant to which the defendant agreed to pay child support of $1,531 per week for the two minor children. This amount was consistent with New Hampshire child support guidelines. *See* RSA ch. 458-C (1992 & Supp. 2000).

The defendant later moved for a further temporary hearing on child support on the ground that the middle child was emancipated. In response, the plaintiff filed a motion for payment of alimony. In March 1997, the Superior Court (*Manias*, J.) approved the Master's (*Nancy J. Geiger*, Esq.) recommendation to reduce the defendant's child support obligation to $4,525 per month and awarded temporary alimony of $3,000 per month. It calculated these awards based on the defendant's average annual income from 1993 through 1996, which was $326,098. The court also stated that it would consider at the final hearing whether there should be an adjustment downward in child support due to the defendant's significantly high income.

In its final decree dated December 3, 1997, the Superior Court (*McGuire*, J.) approved the Master's (*Nancy J. Geiger*, Esq.) recommendation to award $4,525 per month in child support. For purposes of determining child support, the trial court considered the defendant's income from 1990 to 1997, excluding the high and low years and averaging the remaining years. This resulted in an annual income of $369,000. The court also awarded alimony to the plaintiff. For purposes of determining alimony, the court considered the defendant's income to be $100,000 because his income over $100,000 had already been taken into account in valuing his interest in the company.

On appeal, the defendant argues that the trial court erred in: (1) averaging his income to determine his child support obligations; (2)

failing to depart from the child support guidelines on account of his significantly high income; and (3) "double-counting" a portion of his income by using the same income both to value the company and to calculate his child support payment obligations. The plaintiff argues that the trial court erred in reducing the value of the parties' interest in the company: (1) by 28.5% because the defendant was a minority shareholder in the company, a closely held corporation; and (2) by $79,144 to account for a debt owed by the defendant for which he provided no evidence or explanation.

We afford trial courts broad discretion in divorce matters. *Fabich v. Fabich*, 144 N.H. 577, 579 (1999). We will not disturb the trial court's rulings regarding property settlement or child support absent an abuse of discretion or an error of law. *Hillebrand v. Hillebrand*, 130 N.H. 520, 523 (1988).

## I. Child Support

### A. Determination of Income for Purposes of Child Support Obligation

The defendant argues that the trial court improperly determined his income for purposes of his child support obligation by averaging his income over several years. The plaintiff contends that because the defendant's income fluctuates constantly, it is impossible to determine his income without averaging it.

Our case law is clear that trial courts should not employ income-averaging over a number of years to determine child support obligations. *See id.* at 526. Rather, child support should be determined on the basis of present income. *See id.* Thus, the trial court erred by averaging the defendant's income over several years to determine his child support obligation. On remand, the trial court should base the defendant's child support obligation on his present income. We note that this does not leave the plaintiff without recourse when the defendant's income changes. Either party may seek an adjustment in child support by petitioning "for a modification of support payments at any time a change of circumstances warrants it." *Id.* at 526; *see* RSA 458:32 (1992).

### B. Departure from Child Support Guidelines Due to Significantly High Income

The defendant also contends that the trial court erred by failing to depart from the child support guidelines due to his significantly high income. *See* RSA 458-C:5, I(b) (1992). The purpose of the child support guidelines is "to promote uniformity in child support

awards. Accordingly, there is a rebuttable presumption that the amount of the award resulting from the application of the guidelines is the correct amount of child support." *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 508 (1993) (citation omitted). The court may make adjustments in the application of the guidelines, however, due to special circumstances. RSA 458-C:5 (1992). One such circumstance is the "[s]ignificantly high or low income of the obligee or obligor." RSA 458-C:5, I(b).

Because we are remanding this case to the trial court for a recalculation of the income upon which the child support award was based, we need not address whether a deviation from the child support guidelines was warranted. If the defendant should raise this issue on remand, the trial court can consider it.

## II. Property Division

The parties requested that the trial court make an equal division of their property, but disagreed about the valuation of various assets. On appeal, both parties challenge certain aspects of the trial court's valuation of the parties' 49.6% interest in the company. We affirm the trial court's valuation of the company.

### A. Use of Defendant's Income to Value the Company

When it valued the parties' interest in the company, the trial court attributed the defendant's salary in excess of $100,000 to the company, thereby increasing the company's value. The defendant asserts that because he was awarded the parties' interest in the company, the plaintiff was awarded the majority of the parties' real property. The defendant argues that the trial court erred by effectively assigning him a $100,000 salary when it valued the company, while assigning him a much higher salary when it calculated child support. According to the defendant, this resulted in impermissible "double-counting." He does not contend that to remedy the "double-counting" the court should reduce his income for child support purposes. Rather, he argues that the court should remove the "excess income" from the valuation of the company. The defendant cites no authority to support this argument.

The experts for both parties considered the salaries of the company's two officers, the defendant and his mother, when they valued the company. The experts explained that their respective valuation methods would require adjustments to the underlying calculations if the company's officer(s) had been granted inflated salaries. In fact, both experts adjusted their calculations for the defendant's mother's salary. Only the plaintiff's expert, however,

made an adjustment for the defendant's salary. The defendant's expert explained that he had decided against doing so to avoid any "confusion or double counting as to the amount by which [the defendant's] salary was reduced."

In adopting the plaintiff's expert's approach and attributing the defendant's income in excess of $100,000 to the company, the trial court implicitly found that the defendant's income over $100,000 exceeded reasonable compensation for his services. Therefore, consistent with the principle that adjustments are necessary to account for inflated officer salaries when valuing a closely held corporation, the court attributed the defendant's excess salary to the company's earnings. Apparently to avoid "double-counting" the same income, the court then assigned a $100,000 income to the defendant when it calculated alimony. Contrary to the defendant's contention, this ruling does not compel the conclusion that the trial court "double-counted" the defendant's income when it used the defendant's income over $100,000 to calculate child support, but refused to exclude this "excess income" from the valuation of the company.

Alimony and property division are governed by separate statutory provisions. *See* RSA 458:16-a (1992 & Supp. 2000); RSA 458:19 (1992 & Supp. 2000). However, the two are closely related, and may be considered together. Indeed, one factor a court must consider in determining the amount of alimony is the property awarded. *See* RSA 458:19, IV(b) (1992 & Supp. 2000). In contrast, the property division statute, pursuant to which the court valued the company, is unrelated to the child support guidelines. As the defendant concedes, the child support guidelines set out in RSA chapter 458-C mandate that an obligor's entire income be considered. In this case, the trial court's attribution of the defendant's "excess income" for the purposes of valuing the company did not reduce the income actually paid to the defendant. Therefore, it should have no effect on the defendant's income for purposes of calculating his child support obligation.

Furthermore, the defendant has not cited, nor have we found, any case from any jurisdiction which suggests that "double-counting" occurred in this case. The "double-counting" rule, adopted in some jurisdictions, has been applied to bar consideration of a divided asset for the purposes of calculating alimony. *See Cook v. Cook*, 560 N.W.2d 246, 251 (Wis. 1997) (refusing to apply rule in child support context). It appears to be most often applied where an income-

producing asset, such as a pension fund, is divided "in-kind" when the payments fall due. *See In re Marriage of White*, 237 Cal. Rptr. 764, 767 (Cal. Dist. Ct. App. 1987) (refusing to apply rule). We are unpersuaded that the rule should be adopted and applied in this case.

As one court has observed, it is not necessarily "double-counting" "to treat a pension as marital property, award it entirely to the earner spouse (with an offsetting award of marital property to the nonearner spouse) and then to take the earner spouse's receipt of pension benefits into account in determining whether there should be any alimony award to either spouse." *White*, 237 Cal. Rptr. at 767 (quotations omitted). Similarly, it is not necessarily "double-counting" to treat the parties' share of the company as marital property, award it to the defendant, offset the award to the plaintiff, and then use the income from the asset to determine the level of child support.

Finally, we find persuasive the Wisconsin Supreme Court's reasoning in *Cook*, 560 N.W.2d 246, where the court held that the rule against "double-counting" does not bar consideration of a pension both as property for purposes of property division and as income in calculating child support. *Id.* at 252. In so holding, the court stated:

> The property division is an allocation of assets between the parents; each spouse receives something from the division. . . .
>
> In contrast, the child of divorced parents receives nothing from the property division. A child support order gives the child fair support from the non-custodial parent's income including pension proceeds such as military retired pay. Thus, when a . . . court treats a pension which was subject to property division as income for child support purposes, the pension is counted for the first time between the parent and the child. As between the parent and the child, the pension is not being counted twice.

*Id.* Similarly, as between the defendant and his child, the "excess" income the defendant receives is not being counted twice.

■ Accordingly, we conclude that the trial court acted within its discretion when it considered the defendant's entire income when calculating child support, but only $100,000 when calculating alimony.

## B. Reduction in Value of the Parties' Minority Interest in the Company

After determining the fair value of the defendant's interest in the company, the trial court found that because the company is a "closely held family company and [the defendant] does not have a controlling interest, . . . it [is] appropriate to adjust the fair value into a fair market value figure by reducing [the defendant's] share by 28.5%." 28.5% is the net discount calculated by the plaintiff's expert. On appeal, the plaintiff does not contest the amount of the reduction. She argues that the trial court abused its discretion in making this reduction because the defendant "controls" the company and neither he nor his mother, the controlling shareholder, intends to sell the business. We disagree. Neither fact, even if true, supports a conclusion that the trial court abused its discretion when it applied the discounts the plaintiff's own expert used to calculate fair market value.

To determine an appropriate division of marital property, including shares in a closely held corporation, courts generally look to the fair market value of the assets. *Cf.* SUPER. CT. R. 158 (model form Support Affidavit); *Shafmaster v. Shafmaster*, 138 N.H. 460, 470 (1994) (Thayer, J., dissenting); 3 A. RUTKIN, FAMILY LAW AND PRACTICE § 36.10, at 36-44 (2000) ("the goal of valuation of the closely held corporation is to find a value that approximates market value"). Fair market value is the price a willing buyer and a willing seller would probably arrive at through fair negotiations, "taking into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." *State v. 3M Nat'l Advertising Co.*, 139 N.H. 360, 362 (1995) (quotation omitted).

Courts have recognized the need for reducing the value of stock both where there is no ready market for the stock and where a party owns only a minority interest in the corporation. *See, e.g., In re Marriage of Muelhaupt*, 439 N.W.2d 656, 660 (Iowa 1989); *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988). The nonmarketability discount accounts for the fact that the lack of a ready market for closely held stock makes it a less attractive investment to a prospective purchaser. *See* Walzer & Gabrielson, *Valuation of Stock in Closely Held Corporations at the Time of Marriage Dissolution*, 1 J. AM. ACAD. MATRIM. LAW 1, 10 (1985). The minority discount recognizes that a minority interest is more difficult to sell because a minority shareholder does not control the corporation. *See* RUTKIN, *supra* § 36.11[3][d]; Walzer & Gabrielson, *supra* at 12-13.

The plaintiff argues that the minority interest and nonmarketability reductions were inappropriate because the defendant actively participates in the company's management. We disagree. The plaintiff's own expert accounted for the defendant's management role in the company when he calculated the discounts. He specifically noted that the defendant possesses certain elements of control over the company and is responsible for much of the company's management, but nevertheless arrived at a 28.5% discount that takes into account both a minority interest discount and a lack of marketability discount.

We also disagree that the discounts were inappropriate because there was no evidence that the defendant planned to sell his interest. The fact that an actual sale of the defendant's interest in the company was not contemplated at the time of the final hearing is irrelevant to the concept of fair market value.

■ Accordingly, we conclude that the trial court did not abuse its discretion when it applied a 28.5% discount to the "fair value" of the parties' shares in the company to arrive at their fair market value.

### C. Reduction in Value of the Parties' Interest in the Company to Account for a Debt

■ The plaintiff argues that the trial court erred in reducing the value of the parties' interest in the company "by $79,144 to account for a 'loan' which is on the books of [the company], but which the trial court admitted it could not explain." We disagree. In its final decree, the trial court stated that although it was uncertain what the $79,144 was used for, it would be added to the debt the defendant owed the company because it "was incurred well in advance of the parties' separation." We conclude that the trial court did not abuse its discretion in adding the $79,144 to the debt the defendant owed the company. *See Fabich,* 144 N.H. at 579.

We have reviewed the parties' remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

Any remaining issues raised in the notice of appeal but not briefed are waived. *See State v. Mountjoy,* 142 N.H. 648, 652 (1998).

*Affirmed in part; reversed in part; remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.