Manchester Family Division
No. 2011-210

IN THE MATTER OF CAROLYN P. COTTRELL, DDS AND MOSTAFA EL-SHERIF, DMD

Argued: March 8, 2012
Opinion Issued: June 29, 2012

*Hamblett & Kerrigan, P.A.*, of Nashua (*Andrew J. Piela* and *Kevin P. Rauseo* on the brief, and *Mr. Rauseo* orally), for the petitioner.

*Sulloway & Hollis, PLLC*, of Concord (*Patrick J. Sheehan* and *Ronna F. Wise* on the brief, and *Ms. Wise* orally), for the respondent.

LYNN, J. The respondent, Mostafa El-Sherif, DMD, appeals a divorce decree of the Manchester Family Division (*Emery*, J.), recommended by the Marital Master (*Lemire*, M.). He argues that the trial court erred when it adopted an appraisal valuing his business at $1,274,000 for the purposes of the final distribution of property. We affirm.

I

The trial court found, or the record supports, the following facts. After a twenty-three year marriage, the parties separated in February 2009 and divorced in February 2011. The petitioner, Carolyn P. Cottrell, DDS, was a practicing dentist until 1994 and, at the time of the divorce, worked as a clinical associate professor of dentistry at Tufts University. The respondent is also a dentist and operates a successful dental practice in Concord.

The divorce trial required the court to determine the fair market value of the respondent's dental practice. The company hired by the petitioner, Brayman, Houle, Keating, and Albright, PLLC, rendered a report opining that the fair market value was $1,274,000 as of December 31, 2009. Anthony Albright testified in support of that report, which was based upon a formula that seeks to determine the present value of the business by estimating its ability to generate future earnings — the "capitalization of earnings" approach.

The respondent's expert, Dr. Stanley L. Pollock, estimated the business's value to be $156,000. To arrive at this figure, Pollock acknowledged at trial that he did not value the business based upon its transferable value because he knew that the respondent did not intend to sell the business. Thus, his estimate reflected only the business's net tangible asset value, including the value of the equipment and furniture used in the dental practice.

The trial court adopted the petitioner's estimate. Among other reasons for doing so, the court was "incredulous" of the testimony that the business was worth only $156,000 because the respondent paid $410,000 for it in 1996 and it had generated substantial income for him ever since. The court also noted that Albright's appraisal disregarded the respondent's highest earning years (tending to lower the value) and, unlike Pollock's appraisal, accounted for the "substantial goodwill as a business entity." The respondent appeals.

II

RSA 458:16-a, I (2004) defines the property subject to division in a divorce as "all tangible and intangible property and assets, real or personal,

belonging to either or both parties, whether title to the property is held in the name of either or both parties." We have previously defined the fair market value of property as "the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts." *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 447 (2003) (quotations omitted). The valuation of a professional practice is a question of fact to be determined by the trial court based upon the particular facts and circumstances. *Id.* at 450; *see In the Matter of Chamberlin & Chamberlin*, 155 N.H. 13, 16 (2007) ("[D]etermining the value of any given asset is left to the sound discretion of the trial court."). Also a question of fact is the determination of the existence and value of goodwill. *Watterworth*, 149 N.H. at 450. We will not disturb the trial court's findings in this regard unless they are unsustainable on the record. *Id.*

The respondent argues that the trial court erred by attributing a value to his practice that included "professional goodwill" — the intangible value of the dental practice that he asserts would not be transferable upon sale because it is attached to the respondent's own education and reputation. He concedes that the court was free to consider the value of the "practice goodwill" — the goodwill that is severable from the professional reputation of the respondent and therefore transferable to a willing buyer.

On the record before us, we conclude that the trial court sustainably exercised its discretion in adopting the petitioner's valuation of the business. The trial court was presented with two expert opinions to aid in its determination of the business's value. The court found that the respondent's expert, Pollock, vastly underestimated the fair market value of the business, especially in light of his concession that he limited his analysis to its net tangible assets only. When pressed on the value of the business were the respondent to sell it, Pollock stated that he would receive no more than $400,000, but did not arrive at a precise figure. Thus, it was clear that Pollock made no calculation of goodwill in his appraisal. Both Pollock's estimate of $156,000 and his alternative estimate of $400,000 were further undermined by the fact that the respondent paid $410,000 for the business in 1996 and had run an unusually successful dental practice ever since.

In contrast, the court found that the petitioner's expert, Albright, accurately assessed the business's fair market value. Instead of considering only the business assets, Albright employed an appraisal method based upon how the business assets are used to generate income over time. Albright's method discounted for the business's lack of marketability given

its "liquidity issue" and disregarded the respondent's highest earning years, but accounted for the practice's "substantial goodwill as a business entity." The court noted that Albright believed the practice was "completely transferrable despite Respondent's extensive education and reputation." Thus, the court adopted Albright's estimate and distributed the marital property accordingly.

Having lost the battle of the experts, the respondent argues that the trial court's decision "failed to subtract the portion attributable to professional goodwill" and, therefore, the matter must be remanded for an adjustment. The respondent contends that, because Albright did not determine the portion of his estimate attributable to professional goodwill, separate from practice goodwill, the trial court should have adopted a middle ground discounting for professional goodwill. The respondent cites no authority, however, to support the proposition that in a divorce proceeding the trial court must, on its own initiative, both determine the value of professional goodwill and discount it from the overall valuation of a business. Here, we need not decide the legal question of whether professional goodwill is marital property subject to equitable division in a divorce under RSA 458:16-a, for neither expert assigned a precise value, if any existed, to the professional goodwill of the respondent's practice. *Cf. Chamberlin*, 155 N.H. at 16. Had the respondent presented a plausible estimation of the value attributable to his reputation, the trial court could have accorded such evidence its due consideration — further underscoring the factual nature of setting a value to a professional practice. Without having done so, the respondent ran the risk that the court would accept Albright's appraisal in its entirety. *Cf. Tzimas v. Coiffures By Michael*, 135 N.H. 498, 501 (1992) (The trial court "is free to accept or reject an expert's testimony in whole or in part, when faced with conflicting expert testimony." (quotations omitted)). The court's decision, therefore, did not constitute an unsustainable exercise of discretion.

█ Equally unavailing is the respondent's argument that the court erred in adopting Albright's appraisal on the grounds that it included a hypothetical covenant not to compete in its determination as to the fair market value of the dental practice. As noted above, the fair market value is what a willing buyer would pay a willing seller. Notably, both experts agreed that non-compete covenants routinely accompany the sale of professional practices, and New Hampshire law recognizes such contracts as long as they are reasonable. *ACAS Acquisitions v. Hobert*, 155 N.H. 381, 388 (2007). The trial court was therefore entitled to rely upon both experts in considering that, were the respondent to sell his practice, the price would likely include an agreement not to compete.

## III

We have reviewed the respondent's remaining arguments that the trial court should have made adjustments to Albright's appraisal based upon a misapplication of the approach he used, and we conclude that they warrant no extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.