**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2018-0244, In the Matter of Thomas Gelinas and Karin Gelinas, the court on June 5, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. We affirm.

The petitioner, Thomas Gelinas, appeals an order, recommended by a Marital Master (Cooper, M.) and approved by the Circuit Court (Stephen, J.), granting a decree of divorce from the respondent, Karin Gelinas; making orders regarding the division of property, awards of alimony, and child support; and ordering the petitioner to pay certain of the respondent's attorney's fees. The petitioner raises nine issues relating to alimony, the division of marital property and debt, the valuation of the petitioner's business, and the award of attorney's fees. We will refer to the relevant facts as necessary in addressing the petitioner's arguments.

"The trial court has broad discretion in determining matters of property distribution and alimony when fashioning a final divorce decree. Absent an unsustainable exercise of discretion, we will not overturn its ruling or set aside its factual findings." In the Matter of Gronvaldt & Gronvaldt, 150 N.H. 551, 554 (2004) (quotation, citation, and brackets omitted). We sustain the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. In the Matter of Letendre & Letendre, 149 N.H. 31, 34 (2002).

> It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented, including that of the expert witnesses. Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.

Cook v. Sullivan, 149 N.H. 774, 780 (2003) (citations omitted).

We first review the alimony award. The applicable alimony statute provides, in relevant part, that the court shall order alimony, upon timely motion therefor, if it finds that:

(a) The party in need lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a, to provide for such party's reasonable needs, taking into account the style of living to which the parties have become accustomed during the marriage; and

(b) The party from whom alimony is sought is able to meet reasonable needs while meeting those of the party seeking alimony, taking into account the style of living to which the parties have become accustomed during the marriage; and

(c) The party in need is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs . . . .

RSA 458:19, I (2018) (amended 2018); see RSA 458:19-a, I (Supp. 2018).

The petitioner argues that the trial court erred in awarding lifetime alimony to the respondent in light of its findings that the petitioner has a high school education, requires surgery on both hips, has two cardiac stents, suffers from depression and vertigo, and is unable to obtain life insurance. He argues that the award of lifetime alimony to the respondent, "without considering the Petitioner's age and health and the precarious nature of his work situation is an unsustainable exercise of discretion which . . . leaves the Petitioner to pay alimony for the remainder of his life and will require that he work until his death." We find no unsustainable exercise of discretion.

The trial court considered the petitioner's health, and found that "[d]espite these conditions, . . . he is not precluded from working full time and is otherwise in good health. He earns a substantial income and has the ability to generate further assets in the future." See RSA 458:19, IV(b) (2018) (amended 2018) (directing court, in determining the amount of alimony, to consider, among other things, each party's health); see also RSA 458:19-a, IV(a) (Supp. 2018). Although the petitioner contends that "the trial court assumed that [he] will work forever, and that [his] health will remain unchanged into the indefinite future," the court's finding is more accurately interpreted as an appropriate refusal to engage in speculation as to future conditions. Cf. In the Matter of Cohen & Richards, 171 N.H. ___, ___ (decided March 29, 2019) (slip op. at 12-13) (affirming trial court's exclusion of future medical and dental expenses from consideration in determining amount of alimony because such future expenses were speculative). An award of alimony, like that of child support, must generally be based upon current income figures, In the Matter of Nassar & Nassar, 156 N.H. 769, 776 (2008), and changes in circumstances are dealt with by later modification, see RSA 458:14 (2018) (amended 2018), :19-aa (Supp. 2018). As the Court of Appeals of Iowa aptly stated:

2

> [W]e make alimony determinations based on the circumstances of the parties at the time of trial, not based on speculation of what their situations may perhaps be in the future. If changes in the parties' health or employment circumstances occur, either party may seek modification of the [divorce] decree at that time.

In re Marriage of Utter, No. 04-0252, 2005 WL 974694, at *7 (Iowa Ct. App. Apr. 28, 2005).

The petitioner presented no evidence regarding his various health issues that would allow a factfinder to reach any non-speculative conclusions about their impact on his ability to pay alimony. Cf. Cohen, 171 N.H. at ___ (slip op. at 12-13). Similarly, to the extent the petitioner argues that his ability to pay alimony is affected by either his lack of education or "the tentative situation with his company," which "pays a commission on a month to month contract that is terminable without cause," that argument is also based upon speculation. The petitioner's circumstances at the time of trial included employment earning approximately $28,000 per month. He presented no evidence that a change in that employment was anticipated with any certainty or even likelihood.

The petitioner also argues that the trial court failed to consider his age and lack of retirement assets. He contends that the alimony award of $6,500 per month for life "implies that [he] will always be able to pay that amount." For the reasons discussed above, we disagree. To the extent the petitioner is claiming that the alimony award will never permit him to retire, he is mistaken. Because the petitioner presented no evidence of imminent retirement plans, the trial court could not engage in speculation about that future event. When the petitioner's retirement becomes actual or imminent, he may petition to modify the alimony award. See In the Matter of Arvenitis & Arvenitis, 152 N.H. 653, 655-57 (holding that voluntary retirement may constitute a substantial change of circumstances justifying termination of alimony provided it "was not both actually anticipated and foreseeable" at the time of divorce).

The petitioner further contends that the trial court erred in concluding that he "has the ability to generate further assets in the future." He argues that he has no such ability while paying lifetime alimony, "a significant property settlement," and the parties' debt to the IRS. The trial court, however, found that the petitioner earns approximately $28,000 per month, that his "bank statements reflect that he has significant balances available after payment of all his monthly expenses," and that his "representations that he cannot pay his monthly expenses are not credible." The petitioner has not demonstrated that these findings are unsupported by the evidence or legally erroneous. See In the Matter of Nyhan and Nyhan, 147 N.H. 768, 770 (2002). Accordingly, we find no error in the trial court's conclusion that the petitioner "has the ability to generate further assets in the future."

The petitioner next challenges the court's decision to increase alimony once his child support obligation ceases, such that the new alimony amount ($6,500) exceeds the sum of the previous alimony and child support ($5,986). "Implicit in that order," the petitioner argues, "is the assumption that after the termination of the child support obligation, either [his] ability to pay alimony will increase or the Respondent's expenses would increase." The respondent, on the other hand, argues that the increase in alimony reflects that trial court's "acknowledgement that [she] had a continuing need of approximately $6,500 monthly for housing and living expenses regardless of whether the parties' son continued to live with her." We agree with the respondent.

Under the circumstances of this case, in which the parties' son was expected to graduate from high school several months after the final decree, we conclude that the pertinent issue is not whether the increase in alimony was erroneous, but whether the award of $6,500 per month itself is, on its own, sustainable. If so, it may well be the case that the prior amount was insufficient to meet the respondent's reasonable needs, an issue that is not before us. Accordingly, we review only whether it constituted a sustainable exercise of discretion for the trial court to determine that $6,500 per month would both meet the respondent's reasonable needs and allow the petitioner to meet his own reasonable needs while paying that amount to the respondent in alimony. See RSA 459:19, I.

The petitioner contends that the amount awarded in alimony was erroneous "given [that] the lifestyle to which the parties were accustomed was unsustainable." (Bolding omitted.) He also argues that the trial court erred by awarding lifetime alimony to the respondent despite "her continued failure to live within a reasonable means." (Bolding omitted.) The petitioner notes the amounts the respondent expended during the pendency of the divorce; specifically, the trial court found that from August 29, 2016, to June 5, 2017, the respondent spent $132,710.97, or, on average, $13,271 per month. The trial court also found, however, that the respondent "had to use her inheritance funds to supplement [the petitioner's] support payments," which, after the court's August 29, 2016 order, totaled $5,365 per month, "because the payments were not sufficient to cover all of her and [the parties' son's] reasonable and necessary living expenses." The court also found that even after the emancipation of the parties' son, the respondent's "monthly expenses will exceed the amount of support [the petitioner] is currently paying."

We conclude that, even assuming the petitioner's point that the respondent's average monthly expenditures before June 5, 2017 ($13,271 per month) were excessive, the petitioner has not demonstrated that the court's implicit finding that the $6,500 award is consistent with the respondent's reasonable needs is unsupported by the evidence or legally erroneous. See Nyhan, 147 N.H. at 770. In addition, while the petitioner points to the trial court's finding that the respondent inflated her expenses, we note that the

4

court declined to award the respondent the amount of alimony she requested ($8,000 per month), and denied her proposed finding that such an award would be "reasonable and appropriate."[1]  We find no reversible error with respect to the court's determination of the respondent's need for alimony.

The petitioner next challenges the alimony award with respect to his ability to pay.  He contends that the trial court "accepted that, without an ownership interest [in the company employing him, his] salary would be in the range of $60,000-80,000 per year."  He then argues that "[a]limony in the amount of $6,500 per month represents the entirety of [his] income from a standard employer thus necessitating modification."

The petitioner does not, however, work for a "standard employer," but rather, for a company of which he is a 50% owner and from which he earns commissions in addition to his $2,000 weekly salary.  His current earnings at the time of divorce were approximately $28,000 per month.  He presented no evidence that he would not continue in his current employment, other than issues related to his health and "the tentative situation with his company," which we concluded was speculative.  We cannot conclude that the trial court unsustainably exercised its discretion in determining that the petitioner has the ability to pay $6,500 per month in alimony.

Finally, the petitioner cites Calderwood v. Calderwood, 114 N.H. 651, 653 (1974), for the proposition that "[t]he purpose of alimony is not to provide a life-time profit-sharing plan, but rather, to encourage the recipient spouse to establish an independent source of income."  Calderwood's observation is inapposite here, where the respondent is not seeking to "share in any windfall or post-divorce prosperity which may have come to [the petitioner] since the divorce was granted," Calderwood, 114 N.H. at 652, and was found "for the most part" to be unable to work at the time of the divorce due to the state of her health.  The trial court here found that the respondent was disabled and unable to obtain gainful employment and that an award of lifetime alimony was "appropriate given [her] age, disability and lack of earning capacity."  The petitioner has not demonstrated that the court's findings as to the respondent's disability and employability are unsupported by the evidence or legally erroneous.  See Nyhan, 147 N.H. at 770.

The petitioner next contends that the trial court committed an unsustainable exercise of discretion by allocating all of the joint marital debt to

---

[1] The petitioner also points out the trial court's denial of the respondent's requested finding that the reasonable and necessary living expenses for her and the parties' son exceed the amount the petitioner was then paying, which he represents was $5,792.33.  To the extent the petitioner contends that this denial shows that the respondent's reasonable expenses did not exceed $5,792.33, we disagree.  The requested finding cited the respondent's financial affidavit, which listed her total monthly expenses as $10,239, an amount the trial court could well have found unreasonable.

him.  Specifically, the trial court allocated to the petitioner the mortgage debt on the parties' residence and "any monies due and owing to the Internal Revenue Service for jointly filed return[s]."  The petitioner argues that this allocation, for which, he asserts, the trial court failed to state "sufficient supporting factors," is "grossly inequitable."  We disagree.

With respect to the IRS debt, the trial court found the following.  The parties filed for bankruptcy in 2010, at which time they owed more than $400,000 to the IRS.  The parties' bankruptcy attorney negotiated a payment plan with the IRS that "would have realized significant savings had [the petitioner] made the payments required under the Plan."  The petitioner failed to make the payments, and the IRS began collection efforts in late 2014.  On advice that the parties needed to pay $138,111 to cure the arrearage, the respondent paid that amount from an inheritance she had recently received.  In 2015, the respondent paid the IRS an additional $165,000.  "Because of [the petitioner's] failure to adhere to the plan, the amount due as of May 22, 2015 was $477,728.82 after [the respondent] already paid over $303,000 from her inheritance, and the IRS had levied additional funds."  Accordingly, the trial court concluded that "[i]t is fair and just, given [the petitioner's] failure to make timely payments in accordance with the Chapter 11 Plan of Reorganization, that he be solely responsible for the remaining debt to the IRS."

Pursuant to RSA 458:16-a, the court was permitted to consider the following, among other things, in deciding whether to order an unequal division of property:

> (f) The actions of either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties.
>
>  . . . .
>
> (n) The value of any property acquired by gift, devise, or descent.

RSA 458:16-a (2018).  We conclude that the petitioner has not demonstrated an unsustainable exercise of discretion with respect to the IRS debt.

With respect to the allocation of the mortgage debt, we find no unsustainable exercise of discretion in the court's allocating to the petitioner, in addition to the marital residence awarded to him, the mortgage debt associated with it.  We note the trial court's statement that "[t]he Petitioner asks the Court to award him the marital home (and the debt associated with it) maintaining that it is more economically efficient for him to remain in the home for tax and other reasons."

6

The petitioner next challenges the value attributed to his 50% ownership interest in the company for which he works. He contends that that value is "unsustainable given the only contract of the business (from a wholesale manufacturer) is a 30-day contract with a single vendor and given the company has little by way of assets, volatile earnings and given the contractual restrictions." The valuation of a business is a question of fact to be determined by the trial court based upon the facts and circumstances particular to the business. See In the Matter of Cottrell & El-Sherif, 163 N.H. 747, 749 (2012); In the Matter of Watterworth & Watterworth, 149 N.H. 442, 450 (2003). "We will not disturb the trial court's findings in this regard unless they are unsustainable on the record." Cottrell, 163 N.H. at 749.

Both parties presented expert testimony as to the value of the petitioner's interest in the company. The court explicitly found the respondent's expert's "valuation to be more credible based upon the level of completeness and the procedure and methodology utilized to produce the opinion." It also found that the petitioner's expert's report "was replete with errors" including the consideration of the respondent's alimony claim in valuing the business and the failure to include two vehicles as business assets even though a deduction was taken for the debt associated with them.

As the finder of fact, the trial court "has the discretion to evaluate witnesses' credibility and may choose to reject their testimony in whole or in part." In the Matter of Nyhan & Nyhan, 151 N.H. 739, 743 (2005). "[W]e defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Cook, 149 N.H. at 780. On the record before us, we conclude that the trial court sustainably exercised its discretion in crediting the respondent's expert's valuation over that of the petitioner's expert. See Cottrell, 163 N.H. at 749-50; Watterworth, 149 N.H. at 450.

The petitioner next argues that "[c]onsidering the full value of the company while awarding alimony constitutes a double credit for the Respondent as she is being paid both alimony and for an interest in that ability to earn monies." The petitioner fails, however, to sufficiently develop that argument for our review. See Douglas v. Douglas, 143 N.H. 419, 429 (1999). He cites a single case, Rattee v. Rattee, 146 N.H. 44 (2001), in which we rejected the "double counting" theory with respect to company valuation and child support. See Rattee, 146 N.H. at 47-49. As such, the case does not resolve the issue of "double counting" with respect to company valuation and alimony. Although the trial court in Rattee appears to have applied the "double counting" theory in awarding alimony, id. at 48, the alimony award was not appealed, id. at 45-46, and we expressed no opinion on the theory in that regard. The petitioner has cited no law dealing with "double counting" in the alimony context. Accordingly, we conclude that this argument is insufficiently developed and, therefore, decline to review it. See Douglas, 143 N.H. at 429.

7

The petitioner also argues that the trial court unsustainably exercised its discretion in awarding the respondent half of the value of his interest in his business while at the same time awarding her alimony that will be paid from income of that business. The petitioner asserts that in order to pay the respondent her awarded share of his business interest, he "may be forced to sell his interest in the business." If he does so, however, he asserts that he would not be able to pay the awarded alimony. The petitioner attempts to demonstrate his inability to make the required payments with a series of calculations set forth in his reply brief. Those calculations, however, utilize expense amounts that the petitioner has not supported with factual findings by the trial court. We conclude that the petitioner has not demonstrated that the trial court unsustainably exercised its discretion in awarding the respondent both alimony and half the value of the petitioner's share in his business.

Finally, the petitioner argues that the trial court unsustainably exercised its discretion in ordering him to pay $30,000 of the respondent's legal fees.

> An award of attorney's fees must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees. We have previously recognized that an exception may exist in divorce cases. In such cases, the trial court has the discretion to award a party attorney's fees when the trial court has found need on the part of one party and ability to pay on the part of the other. We review the trial court's award of attorney's fees under our unsustainable exercise of discretion standard.

In the Matter of Hampers & Hampers, 154 N.H. 275, 289-90 (2006) (quotations and citations omitted).

The petitioner first contends that the award of attorney's fees was an unsustainable exercise of discretion given that the court declined to grant the respondent's request for a finding that the petitioner's conduct was vexatious. We have recognized an exception to the general rule that parties pay their own counsel fees in cases in which "a party . . . has instituted or prolonged litigation through bad faith or obstinate, unjust, vexatious, wanton, or oppressive conduct." Harkeem v. Adams, 117 N.H. 687, 688 (1977). In this case, however, we conclude that fees were not awarded under that exception, and, thus, the court's failure to find vexatious conduct is of no moment. See In the Matter of Mallett & Mallett, 163 N.H. 202, 212 (2012).

The petitioner also argues that the award of attorney's fees was an unsustainable exercise of discretion given that the respondent failed to curtail her extravagant spending during the pendency of the divorce. He asserts that the respondent "had, or could have had, significant funds with which to pay

her own attorney fees, had she properly managed her money and eliminated her frivolous expenses."

We have noted that in awarding fees under the divorce exception, "the award must be based upon a finding of need on the part of one party and ability to pay on the part of the other." Id. (quotation omitted). We have not required the consideration of any other factors in granting or denying an award under this exception, and the petitioner has not persuaded us to do so here. The trial court found that the respondent has no source of income, no funds left from her inheritances, and is entirely financially dependent on the petitioner. It also found that the petitioner has the ability to pay the ordered fee award. The petitioner has not demonstrated that those findings are unsupported by the evidence or legally erroneous. See Nyhan, 147 N.H. at 770.

The petitioner further asserts that "[t]here was no hearing with regard to the reasonableness of the requested fees or any evidence to support the amount claimed or what it was used for." Essentially, the petitioner contends that the trial court failed to comply with Gosselin v. Gosselin, 136 N.H. 350, 353 (1992), as is required for attorney's fee awards made under the divorce exception. See Hampers, 154 N.H. at 291. We decline to address this argument, however, because the petitioner has failed to provide a record demonstrating that he raised that issue before the trial court. See In the Matter of Neal & DiGiulio, 170 N.H. 671, 680 (2018).

Finally, we note that, in large part, the petitioner's arguments on appeal ask us to reweigh the equities in this case. See In the Matter of Heinrich & Heinrich, 164 N.H. 357, 365 (2012). Our role on appeal, however, is not to reweigh the equities, but "to determine whether the trial court's decision was a sustainable exercise of discretion, meaning that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. (quotation omitted). Having reviewed the record, we find no unsustainable exercise of discretion in the findings and rulings challenged on appeal.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**

9